In the Matter of the MARRIAGE OF Winifred C. TANDY and Roger C. Tandy.

No. 8555.

Court of Civil Appeals of Texas, Amarillo.

Jan. 28, 1976.

Rehearing Denied Feb. 23, 1976.

Lemon, Close, Atkinson & Shearer, G. R. Close, Perryton, for appellant and cross appellee.

J. E. Blackburn, Spearman, for appellee and cross appellant.

ELLIS, Chief Justice.

Winifred C. Tandy and Roger C. Tandy, the parties in a divorce action brought by Winifred C. Tandy as petitioner, appeal from that portion of the judgment dividing the property. Neither party complains of any portion of the decree other than the property division. Each party challenges the community and separate characterization made by the trial court with respect to certain items of property. Affirmed in part and reversed and remanded in part.

Mr. and Mrs. Tandy will sometimes be referred to as "husband" and "wife," respectively. They were married on June 9, 1972 and separated about April 15, 1974. The wife filed this action on May 10, 1974, and on August 2, 1974, the husband as cross-petitioner, filed his cross-action. The case was tried to the court without a jury, and the decree was entered on October 18, 1974. The petitioner-wife was granted a divorce and change of name. Also, the decree recited that the separate and community property owned by the parties should be divided in an equitable manner. Certain listed items of property were awarded to the wife, including one-fourth interest in the 1974 crops, subject to a deduction therefrom of one-fourth of the expenses of hauling, harvesting, etc. The husband was awarded "all other community property" and was to be responsible for the payment of all other community debts. The decree further provided that "[a]ll other property possessed by either party prior to the marriage and still in existence is deemed separate property of that party and is specifically set aside to that party."

In its findings of fact and conclusions of law the court set out what it had concluded to be a fair and equitable division of the community property. Among other matters, the findings of fact and conclusions of law set out that, *excluding certain crops,* the community property on hand was found to have a value of approximately $56,500;

community debts were found to total approximately $39,000, leaving a net value of the community property at $17,500. A portion of the $39,000 community indebtedness above mentioned was $9,824 ($10,000 less $176.00 spent on wheat land) owing to The First National Bank of Perryton, Texas, and $8,000 owed to Batman Grain, Inc., representing expenses in the total sum of $17,824 attributable to the 1974 crops. The court calculated that the community property awarded to Mrs. Tandy, excluding the crops, was worth $8,750, one-half the total net value of $17,500 in community property. It is apparent that the court was seeking to divide the net value of the community property equally between the parties.

With respect to the 1974 crops, Mrs. Tandy was awarded one-fourth of the 1974 wheat, corn and milo crops, in kind. The wheat was in storage, the corn already harvested and the milo yet to be harvested "when it is ready." Also, the decree recited that from such one-fourth interest there would be deducted one-fourth of the expenses for "all unpaid costs of hauling, harvesting, storage, land-lord's share (on leased lands), docks, $730.00 for gas and $116.00 for electricity on the corn crop."

During the period of time relevant to this case, Mr. Tandy was engaged in a joint farming venture with David Tandy, his son by a former marriage. Under the undisputed evidence before the court, and as set out in Mr. Tandy's brief, David Tandy, in exchange for his work in connection with the farming operation, was to receive one-half of the net crop proceeds after all indebtedness, including the indebtedness to the bank and to the grain company, had been paid. The remaining one-half of such net crop proceeds constituted community interests of Mr. and Mrs. Tandy (one-fourth interest to each).

From the decree entered, both parties have appealed. Each party as an appellant, has raised two points of error.

By point of error number one, the appellant wife contends, in effect, that the trial court erred in calculating David Tandy's share or interest in the proceeds of the 1974 wheat, corn and milo crops, by failing to allocate an amount equal to one-half of the cost of raising these crops against his interest, thereby decreasing to such extent the net sum to be credited to the community estate. In the decree no mention was made of the allocation of net proceeds of the 1974 crops to David. However, in the findings of fact and conclusions of law, the court found "that the joint venture with David Tandy is bona fide and . . . that David Tandy has a one-half interest in the 'net proceeds' . . . of the 1974 wheat, corn and milo crops." Net proceeds was defined by the court as "the amount left after deducting the presently unpaid costs of harvest, hauling, storage, landlord's share (on leased lands), and docks and $730 for gas and $116 for electricity on the corn crop." Mrs. Tandy contends that the trial court erred by reason of its failure to take into consideration the formula established by the evidence for determining the amount due David out of the proceeds of the 1974 crops, i. e., none of the crop expenses represented by the bank and grain company indebtedness was deducted from the amount of the crop proceeds allocated to David for his compensation for labor in lieu of a salary. The appellant wife asserts that under the formula applicable, as established by the evidence, the trial court should have included the amount of the indebtedness to the bank and to the grain company, all of which was attributable to expenses incurred in connection with the production of the 1974 crops, along with the expenses of harvest, hauling, etc., in determining the amount of the "net proceeds" of the crops.

Mr. Tandy testified that all of the $9,824 indebtedness to the bank and the $8,000 debt to the grain company, created by an advance on the proceeds to be realized from the sale of the 1974 wheat crop stored in the Batman elevators, was attributable to the Tandy farming operations for the 1974 crops. If an amount equal to one-half of

the indebtedness to the bank and grain company, in the total sum of $17,824, attributable as 1974 crop expenses, (recognized as a part of the community indebtedness), were considered in determining the amount of the net proceeds of the 1974 crops to which David was entitled, in accordance with the evidence with respect to the manner of allocation of expenses and proceeds, the effect would be to increase the community share of the crop proceeds to the extent of $8,912, which represents one-half of such $17,824 indebtedness. We find no indication that the trial court intended to divide the community estate, or any part thereof, other than equally between the husband and wife, and under such formula above discussed, the sum of $4,456 (one-half of the $8,912 charged against the community estate) would be added to the one-fourth equity (subject to one-fourth of certain other expenses) in the 1974 crop proceeds awarded to Mrs. Tandy. Under the trial court's findings, no part of the crop expenses represented by the bank and grain company indebtedness was charged against the portion of the net crop proceeds to be received as compensation by David, while all of such indebtedness was charged against the community share of such crop proceeds.

■ In the light of the foregoing, it is our opinion that the application of the formula established by the evidence with regard to allocating the crop expenses and determining net proceeds requires the community estate to be credited out of the net crop proceeds with an amount equal to one-half of the total indebtedness of $17,824 representing crop expenses with which it was charged as a part of the total community indebtedness. Appellant wife's first point is sustained to the extent above stated.

In her second point of error, Mrs. Tandy contends that a loan payment to the Federal Land Bank made by Mr. Tandy from a commingled bank account was not sufficiently traced to have been derived from $12,500 of Mr. Tandy's separate property

funds; therefore, she urges the community is entitled to be reimbursed for the community funds applied to separate property debts incurred before the marriage of Mr. and Mrs. Tandy but paid during their marriage. Mrs. Tandy contends that the community should be reimbursed by $14,336, the amount of the payment made by Mr. Tandy.

■ Mrs. Tandy properly contends that the burden of tracing is upon the one urging that the property on hand is his separate property. *Tarver v. Tarver*, 394 S.W.2d 780 (Tex.1965). The presumption that all property on hand at the dissolution of the marriage is community property is very strong and can be overcome only by clear and convincing proof. *Tarver v. Tarver*, supra; *Duncan v. Duncan*, 374 S.W.2d 800 (Tex.Civ.App.—Eastland 1964, no writ).

■ The account from which the Federal Land Bank payment was made contained proceeds of grain sales as well as proceeds from the sale of real estate that was the separate property of Mr. Tandy and his two sons. It was undisputed that the proceeds from the grain sales were community property. Mr. Tandy claims, however, that since the exact amount of money that went into the account was known and the exact amount of money that came out of the account was known, the requirements of tracing were satisfied. We agree. There was evidence that the proceeds from the real estate sale, $25,000, were deposited in February, 1974. In February and March, 1974, $6,250 was disbursed to each of Mr. Tandy's two sons as their ownership share of the total. Of the $25,000 deposit, $12,500 remained, which amount Mr. Tandy paid to the Federal Land Bank in March, 1974 on his separate property debt. One dollar has the same value as another; there can be no commingling of dollars where the number owned by each claimant is known. *Farrow v. Farrow*, 238 S.W.2d 255 (Tex.Civ.App.—Austin 1951, no writ). See also, *Humble Oil and Refining Company v. West*, 508 S.W.2d 812 (Tex.1974). Mrs. Tandy's second point of error is overruled.

We next consider the points of error asserted by Mr. Tandy in this appeal. Mr. Tandy urges "no evidence," and alternatively "insufficient evidence" in both of his assignments of error. The "no evidence" points relate to the findings of the trial court that Mr. Tandy failed to meet his burden of proof to establish the separate property character of (1) a $5,000 down payment on the construction of the parties' residence, and (2) an $11,223.94 payment to the John Deere Company. Upon a review of all the evidence, it is our opinion that there is evidence of probative force to support the findings of fact made by the trial court, now challenged by Mr. Tandy as appellant. The "no evidence" contentions are overruled.

In considering Mr. Tandy's "insufficient evidence" points we note that they relate to findings upon which Mr. Tandy had the burden of proof. Mr. Tandy contends that he has met his burden of proof with respect to those factual matters and that the findings of the trial court are against the great weight and preponderance of the evidence with respect to certain transactions and items of property.

In his first point, Mr. Tandy contends that the trial court erred in finding that he failed to meet his burden of proof with respect to the separate property character of a $5,000 down payment on the construction of the parties' residence. The down payment was made by two $2,500 checks drawn against the Roger C. Tandy bank account in July and October, 1972. The deed to the property named both parties as grantees. Both parties signed the mortgage and note for the balance of the purchase price. The testimony of Mr. Tandy was neither clear nor wholly consistent as to the source of this particular money. He testified at one point that he could not identify where the $5,000 came from, but that it was from money he had accumulated. In later testimony Mr. Tandy repeated that he could not identify where it came from, but gave an affirmative response to

an inquiry as whether the source of the $5,000 down payment was his "separate money." It was for the trier of the facts to evaluate the weight and credibility of the testimony.

Mr. Tandy relies chiefly upon the case of *Carter v. Grabeel*, 341 S.W.2d 458 (Tex.Civ. App.—Amarillo 1960, no writ), as support for his contention that the $5,000 down payment was property traced. *Carter v. Grabeel* is distinguishable from the instant case in that it is a case where the court found that the wife had made a down payment out of her separate property and thereby established a kind of tenancy in common between the separate estate and the community estate. In the instant case the character of the down payment itself is in issue, and the court made no express finding as to whether the down payment was separate or community, but instead found that the property was so commingled that it could not be traced. It is our opinion that the holding in *Carter v. Grabeel* is not controlling here. Mr. Tandy's first point of error is overruled.

Mr. Tandy's point of error number two challenges the trial court's finding with respect to a payment to John Deere Company in December, 1972, in the amount of $11,223.94 for the purchase of a farm tractor in 1971. There was evidence that the payment was made with funds borrowed by Mr. Tandy during the marriage of the parties. The evidence included a bank statement for the Roger C. Tandy bank account on which statement Mr. Tandy had made the notation that a deposit of $11,250 was from a "note for J. D. 5020 Tractor 1968 model." The debt evidenced by the note was paid in 1973 in two installments without any indication as to the source of the funds used to pay the debt, except that the funds were attributable to the sale of crops, a transfer from another bank account, a note payment, and government agricultural payments. There was further evidence that not all deposits to the Roger C. Tandy account had been itemized and their sources traced.

Under these circumstances, we cannot say that the finding of the trial court that " . . . the community and separate funds are comingled to such an extent that it is impossible to trace those items and those contentions [by Mr. Tandy] cannot be sustained." is against the great weight and preponderance of the evidence. *Missouri Pac. Ry. Co. v. Somers*, 78 Tex. 439, 14 S.W. 779 (1890). Mr. Tandy's second point of error is overruled.

The trial court's finding with respect to the formula for sharing with David the crop proceeds and expenses is basic to its division of the community property of the spouses. Because we have determined that such finding is not in accordance with the evidence, as we construe it, we sever, reverse and remand the portion of the decree dividing the property of the spouses. This reversal and remand is not to be construed as any interference with the trial court's discretionary power to make the property division between the parties to this divorce action as it deems just and fair on the basis of the evidence and proper equitable considerations.

The portion of the decree pertaining to the granting of the divorce and the change of the petitioner's name is affirmed.