Ida E. TRAWICK, Appellant,

v.

Laura Jean TRAWICK, et al., Appellees.

No. 08–83–00131–CV.

Court of Appeals of Texas,
El Paso.

April 11, 1984.

Tom C. Ingram, Jr., Dallas, for appellant.

John B. Kyle, Henderson, Bryant & Wolfe, Sherman, for appellees.

Before STEPHEN F. PRESLAR, C.J., and OSBORN and SCHULTE, JJ.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This is an appeal from a judgment non obstante veredicto and from a directed verdict granted to the defendants below. Appellant sought a declaratory judgment awarding her an interest in the increased value of stock in a closely held corporation which was the separate property of her deceased husband, Stewart Trawick. She also asserted a community claim to other assets which defendant-executrix inventoried as separate property of the deceased. The court directed a verdict in favor of the separate estate with regard to the latter property. The issue of interest in the stock was submitted to the jury, which returned findings that the deceased had been undercompensated for his efforts in increasing the value of the stock and that the fifty-five percent of the increase in value was attributable to his efforts. Appellees' motion for judgment non obstante veredicto was granted and Appellant was deprived of any interest in the stock's value. We af-

firm in part and reverse and remand in part.

Sabine Machinery Company was founded by the deceased in 1968. It began operating as a corporation on January 1, 1976. Appellant and deceased married on November 12, 1976, and remained married until his death on October 26, 1980. At the time of his death, Stewart Trawick owned 750,000 shares of stock (three-fourths of all issued stock) in the corporation. Throughout the period in question, he was the president and chief operations officer of the business. He devoted his full business life to the corporation, was its actual day-to-day leader and was primarily responsible for its profit and growth. The parties stipulated that during the marriage the value of the corporation increased by $505,901.30.

Expert testimony from a certified public accountant indicated that just over one-half of the increase in value was solely attributable to Stewart Trawick's efforts. Consistent with the expert testimony and other direct evidence of his efforts, the jury found that fifty-five percent of the increase was the result of his work. When Stewart died, his will left none of the stock to the Appellant. She did receive $105,000.00 in insurance proceeds and her interest in uncontested community property. Community cash and checking accounts totalled $46,693.83. As executrix, Stewart's sister, an Appellee herein, listed as separate property certificates of deposit, checking accounts and other cash totalling $356,767.05, as shown by the amended inventory.

In Ground of Error No. One, Appellant contends that the court erred in depriving her of an interest in the increased value of the corporate stock by granting judgment non obstante veredicto. The case was tried in January, 1982, prior to the three Supreme Court opinions in *Jensen v. Jensen*, 26 Tex.Sup.Ct.J. 480 (July 9, 1983), 27 Tex. Sup.Ct.J. 68 (November 9, 1983); 665 S.W.2d 107 (1984). At the time the case was tried, it was clear that one spouse could impose some form of community interest on the increased value of the other spouse's separate property where the in-

crease was due to a manipulation of what would have been a reasonable flow of community income derived from the separate property. It was unclear what characterization should be attached to that interest and hence, the proper allocation of burden of pleading and proof was still in doubt. See: *Jensen I* and *Vallone v. Vallone*, 644 S.W.2d 455 (Tex.1982). Appellant's pleadings were sufficient to encompass the community ownership theory as well as the reimbursement theory subsequently adopted in *Jensen II* and *Jensen III*. Under the community ownership theory, the ultimate burden of proof would have rested primarily on the advocate of the separate estate. Under the present theory of recovery, the burden of establishing the various mathematical factors for reimbursement rests with the surviving spouse.

■ We do find that the *Jensen* opinions should be applied to the issues in this case. The fact that *Jensen* dealt with a distribution following divorce, as opposed to death, enhances the application of that case's theory of recovery here because some considerations which arise in the divorce context are not present and do not contribute further uncertainties to the values which are to be credited or debited to either estate (e.g. relative earning capacity).

■ While the reanalysis by the Supreme Court has helped to solidify the theory of recovery in this type of situation, we are still without a simple mathematical formula for resolution of this or any other such case. The facts of this case clearly pinpoint the factors which remain in shadow. *Jensen III* states:

> [T]he community will be reimbursed for the value of time and effort expended by either or both spouses to enhance the separate estate of either, other than that reasonably necessary to manage and preserve the separate estate, less the remuneration received for that time and effort in the form of salary, bonus, dividends and other fringe benefits, those items being community property when received.

In such a situation, we are confronted with two primary factors—1) increase in the value of separate property attributable to community effort and 2) undercompensation of the community for that effort. Appellant's pre-*Jensen* pleadings, proof, special issues and jury findings supported both elements. Because that is the case and because of the state of legal uncertainty at the time of trial, the degree to which those elements were satisfied leads us to reverse and *remand* in the interest of justice under Tex.R.Civ.P. Rule 434, as opposed to following the course taken in *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (1984).

■ The remaining difficulty arises from the fact that the undercompensation elements consist of two sub-factors—1) what the reasonable value of the effort was and 2) what actual remuneration was received. A simple formulation of the reimbursement could be shown as:

> Attributable increase in value
> − Actual remuneration
> = Reimbursement

This would be neither realistic nor equitable. Such a formula would automatically equate the sum total of the increased value with the "value of time and effort expended by the community." Under *Jensen III* the enhanced value of the stock is one of the factors to be considered by the fact finder in determining the value of the community time and effort. Consequently, the appropriate computation is to determine the discrepancy between the reasonable value of the effort expended and the actual compensation received and then look to the enhanced value of the separate estate to satisfy that discrepancy. This approach was followed in *Faulkner v. Faulkner*, 582 S.W.2d 639 (Tex.Civ.App.—Dallas 1979, no writ). It is consistent with *Jensen III* and we find it most equitable in terms of the interests of the community and the separate estate of the deceased.

The pleadings and evidence addressed all factors comprising the more detailed formula. The stipulated enhancement in value was $505,901.30. The deceased owned seventy-five percent of the stock. The jury

found, consistent with the lay and expert testimony, that fifty-five percent of the enhanced value was attributable to Stewart Trawick's work. Consequently, $208,684.29 was available to satisfy any claim by the community for undercompensation.

In given cases, the total enhanced value may equal or exceed the demonstrated right to reimbursement. We are not yet confronted with a question of right to reimbursement exceeding the enhanced value of a specific separate property asset and will not attempt to suggest the outcome of such a conflict.

Here, Stewart Trawick received a salary of $2,000.00 per month. The marital state existed during forty-eight months, resulting in $96,000.00 in salary. The corporation paid $17,000.00 in life insurance premiums, proceeds from which went to Appellant. Club membership dues for Appellant and the deceased amounted to $5,432.66. The deceased had the use of a new automobile, with no specific value appearing in the record. Appellant received $5,000.00 in company death benefits.

■ For purposes of retrial guidance, contrary to Appellees' position, several items should not be included in the actual compensation figure. These include the $96,000.00 in rental income which Stewart Trawick received by renting his separate real property to the corporation during three years of the period in question. That income was community property not by virtue of his labor and efforts on behalf of the corporation, but as income from a distinct, non-labor separate asset. While it may present an estate question, it is not part of the problem before us. The salary, vehicle and expense account provided Appellant for her labor should also be excluded from the calculation. Absent a showing that her employment was an absolute sham, this compensation is attributable to her toil and effort and not that of her deceased husband. In addition, the deceased's $8,000.00 expense account should not be included absent proof that his draws upon the account exceeded actual expenditures in his day-to-day conduct of company

affairs. Absent such a showing this amounts to reimbursement of his out-of-pocket expenses and not compensation for his labor.

From the present record, the amount of actual remuneration which flowed to the community estate, through various forms of compensation, totalled $126,432.66 plus the value of an automobile during the forty-eight month period from November, 1976, through October, 1980.

■ The final factor to be determined in order to compute the degree of undercompensation, and hence reimbursement due, is the reasonable value of Trawick's labor and effort during that forty-eight month period. Some evidence was offered on this issue. No specific jury finding was sought or obtained. We see no justification for Appellees' theory that the judgment be affirmed on the basis of assumed findings of fact on this issue. As previously stated, we believe that this is a situation ripe for remand under Rule 434. Even in *Duncan,* supra, the Supreme Court stated that remand is appropriate where the party seeking such did present evidence that might allow relief under the proper theory on retrial. In *Duncan,* the defendant's offer of such proof was rejected by the court and no bill of exception was presented. This is not the case here.

The evidence and jury finding reflect that over $208,000.00 in increased value during a four-year period was solely attributable to the efforts of this one individual. This is clearly favorable to the Appellant. Appellees, on the other hand, offered evidence that Stewart Trawick's salary and fringe benefits were in appropriate proportion to those of the other corporate officers and employees. On its face, this evidence favors the Appellees, but perhaps it merely demonstrates an across-the-board undercompensation for labor and "excessive" retainage of value in the corporate entity. Finally, we note that expert witness James Daffron, C.P.A., testified that he had performed accounting and tax evaluations on other businesses in the Dallas area engaged in the same type of work, with simi-

lar sales levels, profit levels and corporate structure. He offered his opinion that officers in positions equivalent to that of Stewart Trawick, during the same time period, were receiving compensation from $60,000.00 to $100,000.00 per year, in addition to fringe benefits. His testimony was highly favorable to Appellant. The compensation range which he presented would support findings of remuneration deficit ranging from $144,000.00 to $304,000.00. Some portion of that range, of course, exceeds the well-established enhanced value of Stewart's estate. As previously stated, we are not yet confronted with a claim, jury finding or award exceeding the attributable enhanced value of the specific separate asset, and that is an issue unresolved by *Jensen III.* That opinion stated that the injured spouse does not gain a lien upon the specific asset of the deceased but rather a money judgment charged against the deceased's estate. Arguments can be made both for and against the use of the enhanced value figure as a ceiling of recovery. Upon retrial, both parties should proceed in a manner mindful of that issue. Point of Error No. One is sustained.

■ Appellant's Points of Error Nos. Two through Five complain of the trial court's directed verdict that the evidence conclusively established certain property as separate property of the decedent. To discharge the burden of the community presumption, a spouse or one complaining through a spouse must trace and clearly identify property claimed as separate. *McKinley v. McKinley,* 496 S.W.2d 540, 543 (Tex.1973); *Tarver v. Tarver,* 394 S.W.2d 780, 783 (Tex.1965).

■ The Appellant presented no witnesses concerning the separate property. The witnesses presented by the Appellees included the employees, relatives and the accountant of the decedent. The Appellant categorizes the accountant as an interested witness. It is not clear that the accountant is an interested witness as there is no showing that he would profit by altering his testimony to suit the Appellees. Even if all the Appellees' witnesses were catego-

rized as interested, their testimony is not wholly without probative force. An instructed verdict is ordinarily improper where interested witnesses provide uncorroborated testimony on an issue on which the party supposedly favored by the witnesses has the burden of proof. An instructed verdict may be proper, however, when:

> [T]he testimony pertains to matters reasonably capable of exact statement, and is clear, direct, and positive, is internally devoid of inconsistencies and contradictions and is uncontradicted either by the testimony of other witnesses or by circumstances—in short, when there is nothing to cause any reasonable suspicion as to its truth .... The most effective corroboration is afforded by the fact that the opponent offers no contrary evidence when the testimony relates to matters not solely within the knowledge of the witness and subject to ready contradiction if the testimony be false.

3 R. McDonald, Texas Civil Practice sec. 11.28.6 at p. 209 (1983). The Appellant has no grounds to complain of the directed verdict being founded on the testimony of the Appellees' witnesses, since there was no reasonable suspicion as to the truth of their testimony and since the Appellant offered no contradicting evidence.

■ Point of Error No. Two relates to $69,965.00 in cash classified as the decedent's separate property. The party with the burden of tracing is aided by the rule that one dollar has the same value as another. Under the law, there can be no comingling by the mixing of dollars where the number owned by each claimant is known. *In the Matter of the Marriage of Tandy,* 532 S.W.2d 714, 717 (Tex.Civ.App.—Amarillo 1976, no writ); *Farrow v. Farrow,* 238 S.W.2d 255 (Tex.Civ.App.—Austin 1951, no writ). Here, the evidence shows that approximately nine months before the marriage, $21,765.00 was held in a safe deposit box belonging to Stewart Trawick. The day after Stewart died, the cash box held $76,465.00. Stewart's accountant testified that $21,765.00 was present in the

same denominations as he counted prior to the marriage. J.W. Mitchell, Jr., testified he knew of a loan made by Sabine Machinery Company, prior to the establishment of the community estate, to a Mr. Beasley. Mitchell testified that he knew the repayments were charged against debt repayments that Stewart received from Sabine Machinery. Mitchell testified that he told Stewart to put the repayments in the safe deposit box. Cash envelopes totaling $19,700.00 were found when the box was opened after Stewart's death. Another $3,000.00 was shown to be debt repayment from Sabine to Stewart. The $500.00 came from accounts receivable that Stewart kept as his separate property when he incorporated the business. That $500.00 was paid the same day the note payment check was cashed. The dates on envelopes containing the last $25,000.00 corresponded to dates on which checks issued by Sabine Machinery to Stewart had been cashed. The payments were for a loan Stewart had made prior to marriage. The cash was clearly traced and the trial court properly ordered a directed verdict. Point of Error No. Two is overruled.

Point of Error No. Three contends that the trial court erred in directing a verdict that certain bank accounts were not community property. The Appellant initially attacks the verdict by arguing that it is based upon hearsay evidence that did not meet the requirements of the business records exception. Tex.Rev.Civ.Stat.Ann. art. 3737e (Vernon Supp.1984). The testimony from the company bookkeeper did fall within the business records exception. She testified that as the bookkeeper for Sabine Machinery, she kept the books for the company and for Stewart individually. The entries were made at or near the time of the transactions, either upon her personal knowledge or at the direction of Stewart who did have personal knowledge as to the transactions. Although Appellant complains that the bookkeeper did not have personal knowledge of the facts behind each and every bookkeeping entry, the business records exception does not require such knowledge. The article requires that the entry be made either upon personal knowledge of the employee or upon the personal knowledge of an employee with the duty to transmit the information. See: Article 3737e(1)(b). Since the contested information was relayed from Stewart to the bookkeeper, the requirements of the act were met. The evidence shows that the disputed funds were on hand before marriage. The interest was transferred to community accounts. The Appellees offered clear and convincing evidence that the funds were separate property. The Appellant offered no evidence to dispute the separate nature of the funds. Point of Error No. Three is overruled.

The Appellant's fourth point of error contests the directed verdict that the home of the decedent and the Appellant was the decedent's separate property. The home was purchased during the marriage. The deed recites that it was purchased by Stewart as his separate property and estate. That recital displaces the community property presumption and establishes a presumption in favor of the separate estate of the spouse named as acquiring the land as separate property. *Henry S. Miller Company v. Evans*, 452 S.W.2d 426, 430 (Tex.1970); *Little v. Linder*, 651 S.W.2d 895, 898 (Tex.App.—Tyler 1983, no writ). Under these circumstances the party contesting the separate character must produce evidence rebutting the separate property presumption. Since the Appellant produced no evidence to rebut the presumption, the Appellees conclusively established the separate nature of the property. Point of Error No. Four is overruled.

The Appellant's final point of error complains that the trial court erred in directing a verdict that the stock in Pettibone Corporation, certain proof coins and two acres of Morris County property were separate property of the deceased. The directed verdict expressly found that the coins and Pettibone stock were correctly listed in the amended inventory as separate property of the deceased. The Court's finding as to the separate character of the

Morris County acreage is implied rather than express. The initial inventory listed the land as separate property. The amended inventory upon which the directed verdict was based deleted the total value and listed the $566.00 sale profit as community property. Judicial endorsement of the amendment necessitated a finding that the real property was separate in nature. All of these assets were acquired during marriage. Appellees offered testimony that they were acquired with separate funds or in satisfaction of separate property debts arising before the marriage. As long as the separate property can be definitely traced and identified, it remains separate property regardless of any mutations or changes which it may undergo. *Norris v. Vaughan,* 152 Tex. 491, 260 S.W.2d 676, 679 (1953). The funds for the purchase of the Pettibone stock were drawn from Stewart's separate account. The executrix testified that the Morris County land was bought with separate funds. Sabine Machinery gave Stewart the proof coins as payment on a debt owed for the issuance of stock. The separate property source for these estate assets was adequately traced to preserve the separate property character. Appellant offered no evidence to rebut the tracing. Point of Error No. Five is overruled.

That portion of the trial court's judgment directing a verdict in favor of the Appellees with regard to the assets which are the subject of Points of Error Nos. Two through Five is affirmed. The judgment non obstante veredicto in favor of the Appellees with regard to reimbursement of the community estate for undercompensation from the Sabine Machinery Corporation is reversed and the cause remanded for retrial of that issue.