**The TRAVELERS INSURANCE COMPANY, Appellant,**

v.

**Iziah HUTCHISON, Appellee.**

No. 321.

Court of Civil Appeals of Texas.

Tyler.

Feb. 8, 1968.

Rehearing Granted March 21, 1968.

Kenley, Boyland, Hawthorn, & Starr, Larry W. Starr, and Jason W. Smith, Longview, for appellant.

Gordon Wellborn, & Rex Houston, Vaughan O. Stewart, Ronald D. Kirst, Richard R. Morrison, III, Henderson, for appellee.

SELLERS, Justice.

This is an appeal from a judgment of the trial court in which the appellee, Iziah Hutchison, was awarded a recovery under the Workmen's Compensation law of this State against appellant upon the jury verdict for 108 weeks of total incapacity and permanent partial incapacity beginning "January 1968."

Appellant's first assignment of error involves the evidence given by Dr. Mann, a witness for appellee. The following proceedings took place:

"Q   Do you know Iziah Hutchison?

"A   Yes, sir.

"Q   Did he come to you seeking medical attention?

"A   Yes, sir.

"Q   Do you remember when you saw Iziah Hutchison?

"A   About the middle of December of '66.

"Q   Did you take a history from Iziah from him when he came to see you?

"A   Yes.

"Q   Would you relate that history to the jury please?

"A   I have got a few notes here, but I saw him on the 16th of December, '66 and Iziah told me that he had been injured over one year ago and that at that time he had injured his back and that Dr. Braswell here in Henderson and Dr. DeCharles of Tyler had seen him and they had been treating him for

a lumbosacral or low back strain, and that he was still having symptoms. He stated to me the way that he originally hurt his back was that he was I believe lifting a window frame and as he raised up he struck his lower back on a bar, where the bar was located, I don't know. That's essentially the history that I obtained and do you want me to give my physical—

"Q Would you tell us if you performed any examinations on Iziah?

"A Yes, sir.

"Q Would you describe the examination you performed, please sir?

"A Well, I just did a general physical on Iziah and noted that his vital signs, meaning his weight, blood pressure, temperature, etc., were normal, the general physical examination was good except that he did his—essentially his findings were limited to the lumbosacral region of the back, of the lower back region, I noted that he had difficulty getting up and down, that he kept his back quite straight, that he had loss of curvature of the lower back, that he had limitation of hyperextension which means bending backwards and flexion meaning bending forwards, that the straight leg raising was limited also bilaterally meaning both legs, that he had no leg signs, what I mean by this is that he had no extension of pain or loss of feeling or that thpe of thing into the legs, that he had tenderness over both the sacral sciatic notches, this is the lower back, had muscle tightness of the paravertebral muscle, that's the muscles along the back region. At this time I prescribed a muscle relaxant and pain medication for him and—

"Q Doctor, let me ask you this. Is the straightning of the curvature of the spine—what does that denote to a trained physician?

"A Means he is having some irritation of the ligamentous muscular structure in this region as a result of irration of the nerves supplying these muscles and ligaments and this has a tendancy to tighten the muscles and pull the back straight.

"Q I see. Now, Doctor, of course a person's bicep, for example, can be either a voluntary contracture of that muscle or an involuntary contracture of a bicep muscle in the arm, can it not?

"A Yes, sir.

"Q Now in the region of the back where you found this straightning of the spine as a result of the contracture of the muscles, is it possible for a person to voluntarily cause that condition to exist?

"A Well, he can to some degree, yes sir.

"Q Are doctors trained in observing their patients and observing their general demeanor and so forth to determine whether or not such a contracture is genuine or is artificial?

"A I feel after you have seen a good many and I say you have looked at a good many, you have felt of a good many that you can determine to a great degree as to whether they are faking or not faking.

"Q Did you reach an opinion in connection with Iziah Hutchison?

"A Well, I felt, yes sir.

"Q Did you feel that he was faking or that his objective signs of the straightning of the curvature of the spine and the contracture of the muscles in that region was a fake or was it actually an involuntary re-

sponse of his body to the trauma, or to some condition?

"A    Well, I would say that most of Iziah's problems were involuntary, I mean this was just a physiological or pathological result of his back problem.

"*    *    *

"Q    Doctor, assuming that an individual in the condition of Iziah Hutchison was in when he was in your office recently, assuming that he injured himself 15 months ago or September 9, 1965 and hadn't worked any since he injured himself and he still maintains the same objective findings which you found in Iziah Hutchison when you examined him this January, would you state whether or not in your opinion a man who has been suffering from this disease for this length of time, would that condition in your opinion be permanent or temporary?

"A    Well, you would have to classify it as permanent type disability.

"*    *    *"

On cross-examination, the following took place:

"Q    Did you ask Iziah whether or not he has tried to do any work since September of 1965?

"A    No, I don't recall.  No, sir.  I don't believe that I did.

"Q    You are basing your judgment here, as you relate it to the jury on his ability to do work and the length of time that it is going to last on the fact that he hasn't worked during this period of time?

"A    No, sir.  On the fact that I have seen a good many cases of a similar nature, taking the history that he related to me, that and the diagnosis that have been given to him by other doctors and what I found on

observation and examination. That's what I am basing my opinion on.

"Q    Is that what your testimony so far is based on?

"A    Yes, sir.

"Q    And you require all those factors in your consideration before being able to render those opinions?

"A    Yes, sir.  I feel so.

"Q    You couldn't render it without any one or more of the things that you have talked about?

"A    I feel that you have to take the accumulation of the facts as they are given you and facts that you find in order to render an opinion, if that is what you mean?

"*    *    *"

The objection of Appellant to such testimony and the ruling of the trial court thereon appears as follows:

"MR.  STARR: Your Honor, at this time we are going to object to the testimony that the doctor rendered on direct examination with regard to his opinion that he gave on the basis that he based those opinions in part on the diagnosis of other physicians, which would be improper and hearsay and could not form the basis of an opinion in his own testimony and further that his testimony reveals that it was necessary for him to consider that in order to arrive at those opinions and therefore it would be inadmissible evidence.

"THE COURT: Overruled."

█  It being true that Dr. Mann did take into consideration the statement of Iziah given in the history of his case that two other doctors had treated him for a low back injury and if this evidence is hearsay as contended by appellant, it would still not be reversible error since Dr. Mann in his testimony found ample evidence of the

disability of Iziah on his examination to support his findings that Iziah was injured and that such injury was permanent.

■ This Court has held that the opinion of an expert, based upon personal knowledge from examination of the patient and upon hearsay evidence, is admissible and not reversible error. Gray et al. v. Bird et al., 380 S.W.2d 908. The assignment is overruled.

■ The second assignment of appellant is that appellee's attorney, in his argument to the jury, committed reversible error. The argument complained of is as follows:

"THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S OBJECTION TO THE JURY ARGUMENT OF APPELLEE'S COUNSEL WHERE WHILE EXPLAINING APPELLEE'S FAILURE TO CALL DR. BRASWELL (THE ORIGINAL TREATING PHYSICIAN OF APPELLEE'S OWN SELECTION), HE ADVISED THE JURY THAT DR. BRASWELL'S OPTION WOULD BE IN CONFORMITY WITH THAT OF DR. MANN AND DR. DECHARLES. * * *

" * * *

"The record reveals that counsel for Appellee made the following statement in the course of his jury argument.

'You know what Dr. Braswell's opinion of Iziah Hutchison's injury is without us bringing him to you. Dr. Braswell is the doctor that under the evidence put Iziah Hutchison in the hospital for some 21 or 24 days and I think we can assume that if Dr. Braswell saw fit to treat Iziah Hutchison beginning on Friday after he was hurt on Thursday for 5 straight days, and his condition was then after 5 days' treatment such that he confined him to the Henderson Memorial Hospital and he stayed there for 21 to 24 days, and Dr. Braswell's opinion would be

in conformity with Dr. Mann and Dr. Patrick DeCharles, that Iziah Hutchison is injured—'

"The record further reveals that at this point Appellant made the following objection to the improper argument of Appellee's counsel * * *:

'MR. STARR: Your Honor, I object to counsel telling the jury what Dr. Braswell's opinion would be if he were here because he was not called and he is a doctor who is subject to Plaintiff's control since Plaintiff selected him of his own choice. It's not proper argument and I object to it for that reason and request that the jury be instructed to disregard this argument.'

"The court's ruling upon appellant's objection to this argument is stated as follows:

'THE COURT: I will overrule the objection, but Mr. Krist, stay within the record.' "

Appellee points out that this argument was made in answer to that made by both of Appellant's attorneys as follows:

"He has been under the treatment, originally, of Dr. Braswell. Dr. Braswell saw him shortly after this accident occurred. There has also been an indication that he was in the hospital. We have not had the benefit of Dr. Braswell's testimony * * *

"Then the other attorney for appellant made this argument:

'Why did not they bring in the physician to whom Iziah went of his own free will and own choice originally: If they wanted to bring you the testimony of that doctor, why didn't they bring him in here?'

"In his closing argument, appellee's attorney made this reply:

"Mr. Krist: They say 'Why didn't they bring you Dr. Braswell'? The doctor that Iziah Hutchison selected of his own

choice as his doctor? Well, let's think about that a minute. Why didn't the insurance company bring Dr. Braswell? He is subject to subpoena. He is right here in Henderson, Texas. Why didn't they bring him to you and pay him some money like they did Dr. Hoover? I will tell you why we didn't bring him to you quite frankly. Because we didn't feel Dr. Braswell could contribute anything more to this case. You know what Dr. Braswell's opinion of Iziah Hutchison's injury is without us bringing him to you. Dr. Braswell is the doctor that under the evidence put Iziah Hutchison in the hospital for some 21 or 24 days and I think we can assume that if Dr. Braswell saw fit to treat Iziah Hutchison beginning on Friday after he was hurt on Thursday for five straight days, his condition was then after five days treatment such that he confined him to the Henderson Memorial Hospital and he stayed there for 21 to 24 days, and Dr. Braswell's opinion would be in conformity with Dr. Mann and Dr. Patrick DeCharles, that Iziah Hutchison is injured—

"Mr. Starr: Your Honor, I object to counsel telling the jury what Dr. Braswell's opinion would be if he were here because he was not called and he is a doctor who is subject to the plaintiff's control since plaintiff selected him of his own choice. It's not proper argument and I object to it for that reason and request that the jury be instructed to disregard this argument.

"Mr. Krist: We feel it is reasonable and it is in the evidence.

"The Court: I will overrule the objection, but Mr. Krist, stay within the record.

"Mr. Krist: Well, we didn't bring you Dr. Brasewell—

"The Court: 'Braswell.'

"Mr. Krist: Braswell, but the fact of what Dr. Braswell did is before you, the confinement in the hospital. * * *"

We are of the opinion that the argument was not only invited but also finds support in the evidence. The argument goes no further than to say that Dr. Braswell did find that Iziah was hurt. This was in evidence from Iziah and from Dr. DeCharles and appellant's witness, Dr. Hoover, who, in answer to a question, testified:

"A   Well, again I didn't have an opportunity to examine the patient during that period. It is likely that for several weeks after an injury of that type that he would be unable to perform manual labor, yes sir."

The assignment is overruled.

Appellant, in his third assignment, complains of the definition of "partial incapacity." Without setting out the definition as given, we deem it sufficient to say that said definition has been sustained many times in compensation cases on appeal. For this reason, we overrule this assignment. Highlands Insurance Company v. Daniel, Tex.Civ.App., 410 S.W.2d 491.

Appellant's fourth assignment of error is that the judgment is excessive. Appellee concedes this error and asks this Court to reform the judgment of the trial court to grant the appellee 276 weeks of partial incapacity and 108 weeks of total incapacity. The request of appellee is granted, and the judgment will be reformed to meet the request of appellee.

The judgment of the trial court, as reformed, is in all things affirmed.

### ON MOTION FOR REHEARING

Appellant filed its motion for rehearing in this cause requesting the court to reconsider its opinion rendered on February 8, 1968, and reverse and render the cause, or reverse and remand. Pending hearing on the motion, however, both parties have filed herein their joint motion requesting this court to grant appellant's motion to reverse and remand the case, for the sole purpose of effecting a settlement thereof, and that Mandate issue immediately.

We adhere to our original decision delivered February 8, 1968. However, the joint motion of the parties is accordingly granted, the judgment heretofore entered is set aside, and the cause reversed and remanded to the trial court for the sole purpose of effecting a settlement of the case. It is ordered that the Mandate issue immediately.