**COMMERCIAL STANDARD INSURANCE COMPANY, Appellant,**

v.

**CISCO INDEPENDENT SCHOOL DISTRICT et al., Appellees.**

No. 4280.

Court of Civil Appeals of Texas.

Eastland.

Nov. 15, 1968.

Rehearing Denied Dec. 6, 1968.

Brown, Day & Crowley, Paul Peebles, Ft. Worth, for appellant.

W. B. Wright, Cisco, for appellees.

COLLINGS, Justice.

The Cisco Independent School District and Cisco Junior College brought suit against Commercial Standard Insurance Company on fidelity bonds issued to each of the plaintiffs to cover any loss which they might suffer by reason of any fraudulent taking or shortage on the part of their Tax Collector Stanley Webb during the period of such bonds. The plaintiffs alleged that between August 31st, 1965 and January 4, 1966, each of them sustained a loss covered by such fidelity bonds; that such a loss was sustained by the Cisco Independent School District in the amount of $2,375.15, and a loss was sustained by Cisco Junior College in the amount of $775.53. The case was tried before a jury and based upon the verdict, judgment was rendered for the plaintiffs. Commercial Standard Insurance Company has appealed.

In appellant's first 5 points it is contended that the trial court erred in overruling its motions for an instructed verdict and for judgment non obstante veredicto; that there was no evidence or insufficient evidence to support the findings that Webb took money from appellees between August 1965 and January 4, 1966, and no evidence that any shortage occurred during the life

of Mr. Webb, or, in the alternative, if any shortage did occur during his life time, there is no evidence to show the amount of such shortage as to either of appellees; that a mere showing that a shortage occurred within a fiscal year, including eight months of the period after Webb's death, did not show that a shortage occurred during his life time or the amount of such a shortage.

The record shows that Mr. Webb had been Tax Collector and Assessor for Cisco Junior College and Cisco Independent School District for several years. During the fall of 1965 he was ill and his office was closed three or four days at a time. Actually it was closed most of the time in November and December of that year. On the morning of January 4, 1966, Webb was found dead in his bathroom at his home with a wound in his head. Immediately an investigation was made at the tax office by the President of the School Board and others, including the local insurance agent of appellant. A great amount of cash, estimated at between $24,000.00 and $27,000.00 was found in Mr. Webb's desk drawers and in an open vault. An official receipt book was found apparently hidden in the office. Some twenty-five hundred unmailed tax statements were also found which should have been mailed in September or October of the previous year. The evidence indicated that Webb had promised the School Board to mail the statements in September and again in October of 1965. The Board members did receive their statements in mid September. A large amount of uncalled for mail was also found at the post office.

An audit had been made of Mr. Webb's records at the close of business on August 31, 1965, and his accounts had been found in good shape. Similar audits had been made for the close of the fiscal years of 1957 through 1964, and the condition of his accounts for each of those fiscal years ending on August 31st, was found to be good. Over $237,000.00 of the school districts' funds had been handled during the last fiscal year from September 1, 1965 through August 31, 1966. The President of the Cisco Independent School District testified that the School Board had absolute confidence in Mr. Webb, although they had at times complained that he was permitting tax payers to make unauthorized partial payments. At the time Mr. Webb was discovered after his death there was no money on his person and it was not known that he had made any unusual purchases or put any money aside.

Mr. Kenneth Cooper, a certified public accountant began working on an audit of the books shortly after Mr. Webb's death. He continued such work for about six months when he died. Another certified public accountant, Mr. Jim Young, then continued the audit covering the fiscal year of 1965 through August 1966. He and those working under his supervision worked more than 310 hours on such audit. As indicated, the audit covered approximately eight months of the period after Mr. Webb's death and during that eight months period a number of people were making collections and handling the books in behalf of the school districts. Mr. Young testified that $3,150.18 of these school districts' funds failed to get to the bank for such fiscal year; that $2,096.56 of this amount was for 1965 taxes and $1,054.12 was for delinquent taxes for former years covering the period from 1958 through 1964. He stated that in his opinion this loss occurred between September 1, 1965 and the time of Mr. Webb's death on January 4, 1966.

■ Appellant's first 5 points are overruled. An examination of the record shows that there was some evidence supporting the findings of the jury and the judgment based thereon. A consideration of all the evidence shows that such findings and the judgment are supported by sufficient evidence. The existence of the shortage in the Tax Collector's office in the amount of $3,150.68, is undisputed. Appellant contends that there is no evidence or insuf-

ficient evidence to show that such shortage occurred during the life time of Mr. Webb. Some of the facts and circumstances which support the findings that the shortage occurred between August 31, 1965 and January 4, 1966 and during Mr. Webb's life time are as follows: He was found dead in his bathroom on January 4, 1966, with a bullet wound in his head. On that same day, more than $24,000.00 in cash and checks was found in various places in his office, including his desk drawer and an open vault. About $2500.00 unmailed tax statements were found in his office which should have been mailed in compliance with the instructions of the school board during the previous September and October of 1965. An official receipt book was also found, apparently hidden under a mass of papers in the back of the vault. This receipt book was, according to the president of the school board, out of series and completely different to anything that should have been done. It contained receipts for taxes covering several years. The receipt book was turned over to Mr. Cooper when he began the audit. A large amount of uncalled for mail was found at the post office. There was evidence to the effect that Mr. Webb had been sick and out of the office a great part of the time for several months. Mr. Jim Young, a certified public accountant, testified that after the death of Mr. Kenneth Cooper, the C.P.A. who began the audit of the tax records, he and those working under his supervision worked more than 310 hours in a continuation of the audit. He testified that after he and his helpers started their work that Mr. Cooper's staff man also did some work for him. He stated that in his opinion the shortage occurred between September 1st, 1965 and January 4th, 1966. He admitted on cross examination that he did not positively know of his own knowledge what the situation was with reference to Mr. Webb's books as of January 4, 1966 and stated in effect that from his work alone he could not with certainty say that all of the shortage occurred during the period from September

1, 1965 through January 4, 1966. He stated, in effect, that his opinion that all of such shortage occurred prior to the death of Mr. Webb dependent to some extent upon the work of Mr. Cooper who began the audit. As already noted he stated that Mr. Cooper's staff man did some work for him. He further stated that there were too many people involved in the collection of funds received after January 4, 1966 and in the examination of the records during the audit for there to be any shortage in such funds after that date. He stated that a large part of the shortage involved instances where an individual would make a partial payment on delinquent taxes covering a number of years; that an individual would pay some amount such as $2.50 or $15.00; that the Tax Assessor and Collector would issue a receipt and put the money in an envelope with that particular tax-payer's record, but because of the rule against partial payments such money was not then deposited nor was credit given on the tax records. Mr. Young testified that funds were not in the vault to cover such collections at the time of the audit.

■ In appellant's 6th point it is contended that, as a matter of law, appellees failed to comply with the terms of their fidelity bonds requiring that appellant be furnished with an affirmative proof of loss in writing and under oath with full particulars, including dates and items of loss within 100 days after discovery of the loss. The evidence supports the conclusion that the required written proof of loss was prepared in the early part of March 1967, and furnished to appellant prior to April 18, 1967. The jury found that appellees discovered the loss in the Tax office on February 13, 1967. That was the date upon which the evidence shows that the accountant, Mr. Young, orally advised the school board of the exact amount of the shortage. A written report by the accountant to the same effect was delivered to the board on February 14, 1967.

Appellant points out that the proof of loss furnished by appellees recites, in ef-

fect that appellees had knowledge of facts and circumstances on January 4, 1966 that might indicate a shortage, and that the loss was discovered on or about January 4, 1966. Appellant asserts that since the discovery of loss was on January 4, 1966, and the delivery of the proof of loss to appellant was in March or April of 1967, there was an obvious failure to comply with the requirement of the bonds that such proof of loss be filed within 100 days after discovery of the loss.

We cannot agree with appellant's contention in this respect. The record shows that appellant's representatives were immediately advised of Mr. Webb's death and of all the facts and circumstances within appellees' knowledge concerning a possible shortage. Representatives of appellant knew that an audit was being made and inquired many times concerning the progress of the audit. The evidence indicates that they did not desire to place an auditor of their own on the case, but considered that the auditors already on the job were satisfactory. It would have been impossible for appellees to have furnished appellant with a written proof of loss with full particulars including the dates and items of loss until the audit was completed. The required proof of loss was furnished to appellant almost immediately upon the report by the accountant to appellees of the completion of the audit advising them to the exact amount of the loss. This, in our opinion, is in keeping with and complies with the proof of loss provision of the bonds. Appellant's 6th and 7th points are overruled.

We also overrule appellant's 8th point in which it is contended that the court erred in permitting the accountant Young to testify concerning his opinion with reference to any shortage because such opinion was based in part upon the earlier investigation of the accountant Kenneth Cooper. The evidence shows that both Mr. Young and Mr. Cooper were qualified and licensed certified public accountants experienced in auditing school tax records. Mr. Young testified that his opinion was based upon the result of 310 hours work done by him and others under his direct control and supervision and whose work he had personally verified for accuracy. He also stated that his opinion concerning the shortage was based to some extent upon the work of Mr. Cooper who began the audit. Actually Mr. Cooper's staff man worked with Mr. Young for some time after he began a continuation of the audit. The testimony of Mr. Young concerning the shortage was admissible and the court did not err in overruling appellant's objection thereto. Texas Employers' Insurance Association v. Rogers, Tex.Civ. App., 368 S.W.2d 21, (1963, writ ref. n. r. e.); Norris v. Lancaster, 280 S.W. 574, (Comm.Apps.); Gray v. Bird, 380 S.W.2d 908, (Ct.Civ.Apps., 1964, writ ref. n. r. e.); Travelers Insurance Company v. Hutchison, 425 S.W.2d 832, (Ct.Civ.Apps., 1968).

The judgment is affirmed.