**Katie S. WELDER, Appellant,**

v.

**Patrick H. WELDER, Jr., Appellee.**

No. 13–89–222–CV.

Court of Appeals of Texas, Corpus Christi.

May 24, 1990.

Rehearing Overruled Aug. 31, 1990.

Pat Maloney, Sr., Gary D. Howard, Charles A. Nicholson, Richard Orsinger, San Antonio, for appellant.

John U. Hemmi, Kirk Patterson, Stewart, Hemmi & Pennypacker, San Antonio, for appellee.

Before KENNEDY, UTTER and SEERDEN, JJ.

## OPINION

KENNEDY, Justice.

This is an appeal from the property division in a divorce case. Patrick and Katie Welder were married on January 2, 1956. The husband brought a number of inherited properties and royalty interests into the marriage. The primary source of income for the couple's living expenses over the term of the marriage were the husband's inherited royalty interests, which continue to provide $200,000 a month on average. The couple also generated income through their farming and ranching activities on the husband's inherited lands, as well as on other lands the couple bought during the term of the marriage. In the latter half of 1987, the couple ceased living together as husband and wife and the husband filed the present action for divorce on grounds of insupportability. After a jury trial, the court entered a decree of divorce, awarded each party their separate property, and divided the community estate between the parties. The wife brings seventeen points of error, primarily complaining of the trial court's award to the husband of various lands as his separate property. The husband brings one cross-point essentially supporting the court's award and requesting additional reimbursement for his expenditures of separate funds to retire the debt on community property. We reverse and remand the judgment of the trial court in part, and affirm the remainder.

By her tenth and eleventh points of error, appellant challenges the legal and factual sufficiency of the evidence to support the jury's finding that the husband owns a 53% interest in the Welder–Dobie Ranch as his separate property. By her fourteenth point, appellant challenges the legal and factual sufficiency of the evidence to establish the husband's separate property interest in the Adami, Bridge Street, Port O'Connor and Port Aransas properties. In considering a "no evidence", "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

Moreover, under Tex.Fam.Code Ann. § 5.02 (Vernon Supp.1990), property possessed by either spouse during or on dissolution of marriage is presumed to be community property, and the party claiming it as separate has the burden to over-

come this presumption by clear and convincing evidence. *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex.1987); *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex. 1965); *Harris v. Harris*, 765 S.W.2d 798, 802 (Tex.App.—Houston [14th Dist.] 1989, writ denied). To discharge this burden a spouse must trace and clearly identify the property claimed as separate. If separate property and community property have been so commingled as to defy resegregation and identification, the statutory presumption prevails. However, when separate property has not been commingled or its identity as such can be traced, the statutory presumption is dispelled. *Hanau*, 730 S.W.2d at 667; *Tarver*, 394 S.W.2d at 783; *Harris*, 765 S.W.2d at 802. As long as separate property can be definitely traced and identified, it remains separate property regardless of the fact that it may undergo mutations and changes. *Norris v. Vaughan*, 260 S.W.2d 676, 679 (Tex.1953).

Specifically, our courts have found no difficulty in following separate funds through bank accounts. *Sibley v. Sibley*, 286 S.W.2d 657, 659 (Tex.Civ.App.—Dallas 1955, writ dism'd). A showing that community and separate funds were deposited in the same account does not divest the separate funds of their identity and establish the entire amount as community when the separate funds may be traced and the trial court is able to determine accurately the interest of each party. *Holloway v. Holloway*, 671 S.W.2d 51, 60 (Tex.App.—Dallas 1983, writ dism'd); *Harris v. Ventura*, 582 S.W.2d 853, 855 (Tex.Civ.App.—Beaumont 1979, no writ). One dollar has the same value as another and under the law there can be no commingling by the mixing of dollars when the number owned by each claimant is known. *Trawick v. Trawick*, 671 S.W.2d 105, 110 (Tex.App.—El Paso 1984, no writ); *Farrow v. Farrow*, 238 S.W.2d 255, 257 (Tex.Civ.App.—Austin 1951, no writ).

In addition, when separate funds can be traced through a joint account to specific property purchased with those funds, without surmise or speculation about funds withdrawn from the account in the interim, then the property purchased is also separate. *See McKinley v. McKinley*, 496 S.W.2d 540, 543–44 (Tex.1973); *DePuy v. DePuy*, 483 S.W.2d 883, 887–88 (Tex.Civ. App.—Corpus Christi 1972, no writ).

In the present case, the basis on which husband claims the majority of the properties in dispute as his separate property is his tracing of the purchase price back to royalties generated from his inherited oil and gas interests. The initial question then is whether this royalty income was his separate property. The general rule is that royalties paid for oil and gas produced from the separate property of a spouse are payment for the extraction or waste of the separate estate, and therefore, remain that spouse's separate property. *Norris v. Vaughan*, 260 S.W.2d 676, 679 (Tex.1953).

If one spouse believes that the other has expended an unreasonable amount of community effort in managing these separate property interests, moveover, it is that spouse's burden to prove an expenditure of community effort sufficient to impress a community character upon the separate asset and to entitle the community estate to reimbursement. *See Jensen v. Jensen*, 665 S.W.2d 107, 110 (Tex.1984); *Vallone v. Vallone*, 644 S.W.2d 455, 458–59 (Tex.1982); *Norris*, 260 S.W.2d at 680. In the present case, the jury found that the community estate was due no reimbursement from the husband's separate estate for time, talent or labor expended by the husband. The royalty payments, therefore, remained the separate property of the husband.

We turn now to the tracing of this separate property interest to the various properties presently in dispute. Husband testified that he purchased the Welder–Dobie Ranch, and the Adami, Bridge Street, Port O'Connor and Port Aransas properties as his separate property with royalty income funds. In addition, both husband and Zafereo testified that all income from whatever source has consistently been deposited in the couple's joint account at First Victoria National Bank, and all expenses have

been paid from that account, and that the royalty income from husband's separate estate averages $200,000 a month, while the community estate spends more money on living expenses and community business expenses than the community farming and ranching businesses can support. This explains the consistent abundance of the husband's separate funds, and the lack of community funds, in the joint account.

Accountant Howard's testimony, however, provides the primary evidence tracing the oil royalty payments through the joint account and to the purchase of the assets in dispute. Howard analyzed and summarized the couple's business records as will hereafter be discussed in points five and six. He treated all oil and gas royalty payments as separate property, and he applied the community-out-first presumption to expenditures from the account. Receipts from ranching and farming operations, interest income, and any other sources of income were treated as community. Specifically, Howard testified that the Welder–Dobie Ranch, and the Adami, Bridge Street, Port O'Conner, and Port Aransas properties are husband's separate property, having been purchased with funds in the joint account which can be traced entirely to husband's separate royalty income.

Appellant's own accountant Rishebarger, though he challenged Howard's overall tracing as unreliable considering the state of the couple's financial records, testified that he used Howard's initial tracing work in the preparation of wife's case, and that based on his own analysis of the community and separate funds in the joint account at the time the various properties were purchased, the $300,000 down payment on the Welder–Dobie Ranch was made from husband's separate funds, the Adami tract was 62% his separate property, the Bridge Street tract was 51% separate, the Port O'Connor tract was 53% separate, and the Port Aransas tract was 77% separate.

Finding lower percentages even than appellant's accountant conceded, the jury calculated husband's separate interest in the Adami tract at 53% and in the Port O'Con-

nor tract at 50%. They agreed with Rishebarger that the husband owned 77% of the Port Aransas tract, and they only exceeded his percentages on the Bridge Street tract, which they found to be entirely the husband's separate property.

Based on tracing of separate funds as testified to by the accountants for both parties, we hold that there was legally and factually sufficient evidence for the factfinder to have determined accurately, without surmise or speculation, the interests allocated to husband in the Adami, Bridge Street, Port O'Connor and Port Aransas tracts. Appellant's fourteenth point of error is overruled.

■ With regard to appellant's tenth and eleventh points of error, as will hereafter be discussed in our analysis of point one, the intention of the spouses is the primary consideration affecting the community or separate nature of property acquired with borrowed funds. The husband testified concerning his conversations with the wife about acquiring the Welder–Dobie Ranch that the wife was specifically against it, but that, "I told her *I* was going to buy it, and I think that was essentially all that was ever said." Thereafter, husband alone negotiated the purchase of the ranch, taking the Deed in his name and signing the notes in his name alone. These facts together with the ability of husband to pay for the ranch with his separate funds and his actions in the face of her objections to the purchase, his assertion that "I" not we, would purchase the ranch, together with the wife's apparent acquiescence to the assertion, are sufficient to justify the factfinder in determining that both spouses intended for the Welder–Dobie to be held as the husband's separate property. Appellant's tenth and eleventh points of error are overruled.

By her first three points, appellant complains of error in the jury charge. By her first point of error, appellant complains that the trial court erred in submitting an incorrect instruction regarding separate property credit.

The charge instructed the jury that:

Property acquired with separate-property monies, property, or separate credit is separate property.

If the spouse evidenced a clear intention to repay the credit with his separate funds at the time of extension of credit, the credit and the proceeds from the credit is separate property.

The wife timely objected to this instruction as an incorrect statement of the law on the characterization of separate property, and she tendered, and the trial court rejected, an instruction concerning the community or separate character of funds or property acquired with community or separate credit, respectively.

The present controversy centers around the characterization of the Welder–Dobie Ranch, valued by the jury at $22,284,-400.00, as separate or community property. The couple bought the ranch after their marriage with two $90,000 promissory notes and the assumption of $1,300,000 in debt already existing on the property, and paid $300,000 in cash for existing improvements on the land. The Welder–Dobie Ranch purchase agreement, the deed and the notes themselves all name the husband as the grantee/debtor. The husband testified that the wife opposed the purchase of the Welder–Dobie Ranch and never showed an interest in it, and that he intended to and did pay for the property out of his separate funds. The husband thus claims that it is entirely his separate property. The wife, however, claims that the ranch is entirely community property because it was purchased with community debt. The jury found 53% of the Welder–Dobie Ranch to be the separate property of the husband, and in its decree of divorce the trial court awarded the husband as his separate property a 53% undivided interest in the ranch.

■ To support his separate interest in the ranch at trial, the husband relied upon the inception of title rule, which provides that property acquired during marriage takes it status as separate or community at the time of its acquisition, and its status becomes fixed at that time. *Henry S. Miller Co. v. Evans*, 452 S.W.2d 426, 430 (Tex. 1970); *Smith v. Buss*, 144 S.W.2d 529, 532

(Tex.1940). The husband contends that his intentions to hold the ranch as separate property and pay for it out of his separate funds established the funds and the ranch as his separate property.

■ Early Texas Supreme Court cases on the status of property acquired on credit spoke of the "intention of the parties" as the controlling factor in determining whether such property was community or the separate property of one of the spouses. *McClintic v. Midland Grocery & Dry Goods Co.*, 106 Tex. 32, 154 S.W. 1157, 1159 (1913); *Sparks v. Taylor*, 99 Tex. 411, 90 S.W. 485, 490 (1906). In *Armstrong v. Turbeville*, 216 S.W. 1101, 1105 (Tex.Civ. App.—El Paso 1919, writ dism'd), the court relied upon *McClintic* and *Sparks* for the proposition that, "[i]f the wife borrow money for the benefit of her separate property, intending to repay it out of her separate estate, and both she and her husband intend that the borrowed fund shall belong separately to the wife, such will be its status, though the husband has signed the note and pledged his separate property to secure the loan." *See also Edsall v. Edsall*, 240 S.W.2d 424, 427 (Tex.Civ.App.—Eastland 1951, no writ). The primary consideration affecting the community or separate nature of the property remains today the intention of the spouses as shown by the circumstances surrounding the acquisition of the property.

■ Where all or part of the funds used in acquiring the property is borrowed, the lender's knowledge of the spouses' intentions is of significant importance. However, the intention of one spouse alone to repay a loan out of separate funds and hold the property purchased with the proceeds of that loan as separate property has never been controlling. In *Foster v. Christensen*, 67 S.W.2d 246, 249 (Tex.Comm'n App. 1934, holding approved), the Texas Commission of Appeals stated in discussing a wife's interest in land purchased in part with cash and in part financed by the prior owner that, "ownership of the land as her separate property would have been established by proof ... that the cash payment was made out of her separate funds and

that it was agreed at the time *by the parties to the deed* that the land should be her separate property and that the balance of the purchase money should be paid out of her separate funds." (emphasis added). *See Solether v. Trinity Fire Insurance Co.,* 78 S.W.2d 180 (Tex.Comm'n App.1935, opinion adopted); *Gleich v. Bongio,* 99 S.W.2d 881, 884 (Tex.Comm'n App.1937, opinion adopted); *See also Broussard v. Tian,* 295 S.W.2d 405, 406 (Tex.1956); *Glover v. Henry,* 749 S.W.2d 502, 503 (Tex. App.—Eastland 1988, no writ); *Holloway v. Holloway,* 671 S.W.2d 51, 56–57 (Tex. App.—Dallas 1983, writ dism'd); *Goodridge v. Goodridge,* 591 S.W.2d 571, 574 (Tex.Civ.App.—Dallas 1979, writ dism'd); *Beeler v. Beeler,* 363 S.W.2d 305, 307–308 (Tex.Civ.App.—Beaumont 1962, writ dism'd); *Goodloe v. Williams,* 302 S.W.2d 235 (Tex.Civ.App.—Texarkana 1957, writ ref'd). These cases suggest that the intention of the lender to look solely to the property of one spouse is an evidentiary factor of prime importance in showing by clear and convincing evidence that the spouses intended to hold the property as one spouse's separate property, especially where there is no other evidence of such an agreement.

■ The present jury instruction, suggesting that the unilateral intention of the husband was controlling in determining the separate nature of the funds borrowed, and of the ranch thereby acquired, was clearly a mistatement of the law. *Holloway,* 671 S.W.2d at 56–57. In view of the jury's finding that the husband had a separate 53% interest in the ranch, moreover, the instruction caused the rendition of an improper verdict and was harmful. We sustain appellant's first point of error. Therefore, we need not address appellant's second and third points of error, which complain of the trial court's failure to submit correct instructions on community and separate credit.

■ By her fourth through sixth points of error, appellant complains of Petitioner's Exhibits 42 and 42A, and testimony based on these exhibits. Appellant complains by her fourth point that the record in this case failed to include Petitioner's Exhibits 42 and 42A, which have since been found and included. Appellant's fourth point of error is therefore overruled as moot.

■ By her fifth and sixth points of error, appellant complains that the trial court erred in admitting Petitioner's Exhibits 42 and 42A, and in permitting expert witness David Howard to testify to the separate or community nature of property based on these exhibits.

Throughout the term of the marriage, the couple maintained a joint account at First Victoria National Bank into which they deposited all income from the oil and gas royalties, the couple's farming and ranching business, and any other source, and from which they paid all business and living expenses and purchased the majority of the assets presently in dispute. The husband's inherited royalty income, which he claimed as his separate property, provided the majority of the income deposited to this account, but, during the term of the marriage, husband made no attempt to distinguish the community or separate nature of these deposits and expenditures.

Near the time the husband initiated the present divorce proceedings, however, in order to trace his separate property interest through the account and to the purchase of various assets, husband hired David Howard, a tax accountant with Arthur Anderson and Company, to trace the assets and liabilities of the couple in connection with the divorce. With the help of a team of other accountants that Howard assembled to analyze the Welders' business records, Howard prepared a schedule, designated Petitioner's Exhibit 42 (PX–42), tracing community and separate income and expenditures through the joint account, to the purchase of the various assets in dispute.

Specifically, PX–42 provided a daily tracing of all deposits, expenditures and purchases of assets from January 1, 1956 through May 31, 1988, based on a review of all the ledgers, cash disbursement and cash receipts journals, deposit slips, and the cash receipts analysis prepared by husband's prior accountant, Mark Zafereo.

Howard and his team also prepared a separate schedule, designated Petitioner's Exhibit 42A (PX–42A), to provide background information on, and analyze the purchase of the particular items included in PX–42. PX–42A also includes the Petitioner's Third Amended Inventory of Assets.

Howard testified that he treated all oil and gas royalty payments as separate property, while receipts from ranching and farming operations, interest income, and any other sources of income were treated as community. With regard to expenditures from the account, Howard testified that he presumed that community funds within the account were withdrawn first before separate funds were used to pay the routine business and living expenses. In addition, Howard testified specifically on each of the properties presently in dispute and listed in the exhibits as the husband's separate property, that they had been accurately traced from the husband's separate royalty income funds.

The trial judge admitted the exhibits as summaries and allowed Howard to testify from them, over the objections of appellant that the exhibits and any testimony therefrom were hearsay, and that the exhibits did not come within the Tex.R.Civ.Evid. 1006 exception as summaries of voluminous records.

By her fifth point, appellant complains specifically that it was error for the trial court to admit PX–42 and PX–42A into evidence because they were hearsay which did not fall within the Rule 1006 exception.

In order to bring a summary within the guidelines of Rule 1006, the party sponsoring the summary must lay the proper predicate for its admission, by demonstrating that the underlying records were voluminous, were made available to the opposing party for inspection and use in cross examination, and were admissible under the Texas Business Records Act.[1] *Aquamarine Associates v. Burton Shipyard, Inc.*, 659 S.W.2d 820, 821 (Tex.1983); *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80, 92 (Tex.1976); *see also Xonu Intercontinental Industries v.*

*Stauffer Chemical Co.*, 587 S.W.2d 757, 760 (Tex.Civ.App.—Corpus Christi 1979, no writ). In *Aquamarine*, for instance, the Texas Supreme Court held a summary to be inadmissible hearsay because the underlying business records upon which it was based were never shown to be admissible.

Mark Zafereo, the husband's office manager and accountant since 1980, testified that he is the custodian of the couple's business records from which PX–42 and PX–42A were prepared, that these records have been maintained in the due course of business over the years, and that they have been made fully available to appellant and her accountants. Through Zafereo's testimony, appellee adequately established that the underlying business records had been made available to the appellant, and would have been admissible themselves as business records. *See Victor M. Solis Underground Utility & Paving Co. v. City of Laredo*, 751 S.W.2d 532, 536 (Tex.App.—San Antonio 1988, writ denied); Tex.R.Civ. Evid. 803(6). In addition, it is apparent from the testimony of both Howard and Zafereo and the parties did not dispute that the underlying records were voluminous.

Appellant primarily complains that PX–42 and PX–42A contain not only a summary of the couple's business records, but also Howard's accountant's conclusions and categorizations of the income receipts, the expenditures, and the daily balance in the account as either community or separate. In addition, the exhibits also classify the assets purchased from funds in the account as community or separate, based on the nature of the expenditures.

These characterizatons are based on Howard's accountants' analysis of the nature of the deposits and expenditures. In *United States Fire Insurance Co. v. Stricklin*, 556 S.W.2d 575, 580–81 (Tex.Civ.App.—Dallas 1977), *writ ref'd n.r.e.*, 565 S.W.2d 43 (Tex.1978), the Dallas Court of Civil Appeals held that a summary of certain repair expenses was inadmissible because the underlying records from which it was prepared contained the hearsay notations of

---

**1.** Now contained in Tex.R.Civ.Evid. 803(6) &      902(10).

one of the witnesses which were used to characterize the expenses as either fire-related or routine repair. In *Stricklin v. United States Fire Insurance Co.*, 565 S.W.2d 43 (Tex.1978), however, the Texas Supreme Court specifically disapproved the lower court's holding that the summary was inadmissible. Similarly, in the present case, though the characterizations made by Howard and the accountants under him are included within the summary, they do not make the summary itself inadmissible.

■ By her sixth point of error, appellant complains that the trial court erred in permitting Howard to testify to the separate or community nature of various assets based on PX–42 and PX–42A. Having held these exhibits to have been admissible in discussing appellant's fifth point of error, we also hold that Howard's testimony based on these exhibits was proper.

Nevertheless, even if the summaries and records were inadmissible hearsay, we agree with appellee that Howard's testimony was still admissible under Tex.R.Civ. Evid. 703, which provides that the facts or data upon which an expert relies in a particular case need not be admissible in evidence if they are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *See Liptak v. Pensabene*, 736 S.W.2d 953, 957 (Tex.App.—Tyler 1987, no writ); *Sharpe v. Safway Scaffolds Company of Houston, Inc.*, 687 S.W.2d 386, 392 (Tex.App.—Houston [14th Dist.] 1985, no writ). Specifically, in *Seaside Industries, Inc. v. Cooper*, 766 S.W.2d 566 (Tex.App.—Dallas 1989, no writ), the Court stated in dicta that an accountant expert could testify to the financial status of a party under Rule 703, even if predicated upon his review of inadmissible business records. *Id.* at 571; *see also Parkview General Hospital, Inc. v. Ashmore*, 462 S.W.2d 360, 365–66 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.); *Commercial Standard Insurance Co. v. Cisco Independent School District*, 435 S.W.2d 565, 568 (Tex.Civ.App.—Eastland 1968, writ ref'd n.r.e.). In *Commercial Standard Insurance Co.*, moreover, the Court allowed an accountant to base his testimony in part on his review of the work of a prior certified public accountant. *Id.* at 568.

In the present case, we hold that the trial judge could reasonably have concluded that the business records and the summary were of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. Howard recounted the particular records he used and testified that he was able to trace adequately with these records. In addition, accountant Zafereo testified that the couple's business records were kept in the ordinary course of business, that there was nothing unusual about them, that he has seen this general ledger system and disbursement journal-type system used in many businesses, and that the analysis of community and separate property tracing could be done from the records available. Finally, Edward Rishebarger, a San Antonio C.P.A. employed in March of 1988 by wife, testified that he also relied upon the records and summaries prepared by Howard in the preparation of wife's case. Although it is true that none of the accountants appear to have ever specifically testified that the records and summaries thereof are of a type that is generally relied upon by experts in the field, the trial court could reasonably infer this from their testimony concerning the trustworthiness of the records, that tracing could be done from the records available, and from the accountants' own use of and reliance on the records and summary.

■ In addition, because Howard's testimony was properly before the jury and the characterizations contained within the summaries were merely cumulative of that testimony, even if those summaries were improperly admitted into evidence as business records, we hold that the error would not have been such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case. *See Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d 361, 365 (Tex.1987); *Bounds v. Scurlock Oil Co.*, 730 S.W.2d

68, 71 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); Tex.R.App.P. 81(b)(1).

Appellant's fifth and sixth points of error are overruled.

Wife complains by her twelfth, thirteenth and seventh points of error that husband was judicially estopped by a prior tax claim from denying a gift to her of one-half of the Greenlake, Sinton and Camaron Ranches, and from introducing evidence that certain income therefrom was separate property. The jury found in response to Special Issues 10 and 12 that husband did not make a gift of any of the various properties to wife, nor did he represent to her that they jointly owned all real and personal property. Judgment was rendered in accordance with these findings.

The doctrine of judicial estoppel bars a party who successfully maintained a position in a prior judicial proceeding from afterward adopting an inconsistent position, in the absence of a showing that the prior statement was made inadvertently or as a result of mistake, fraud or duress. *Long v. Knox*, 291 S.W.2d 292, 295 (Tex. 1956); *Moore v. Neff*, 629 S.W.2d 827, 829 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

Wife based her judicial estoppel argument on a claim the couple filed with the United States Internal Revenue Service in 1967 to recover certain taxes which reflected the government's determination that they were not eligible for certain business deductions on their jointly field income tax returns. This claim for recovery was dependent upon the couple showing that they operated the ranch and oil businesses as a single trade or business. At trial, a Federal District Judge made findings consistent with the couple's assertion that the oil and ranching operations were treated as a single unified business, and gave judgment to the couple for $1,219,741.14 against the United States Government.

Wife points to a portion of the couple's claim, upon which the couple relied in the prior federal action, stating that:

The facts in this case abundantly disclose that *the royalty interests held by Mr. and Mrs. Welder* were part of *their oil and gas business,* requiring the expenditure of considerable time and money, and that the ranching activities and oil and gas activities, including royalties, constituted one trade or business ... (emphasis added).

She argues that the claim effectively represented that the couple jointly owned the property in question, and is inconsistent with the husband's present claim of separate ownership.

One of the requirements for the application of the doctrine of judicial estoppel, however, is that the prior statement must have been deliberate, clear, and unequivocal. *American Savings and Loan Association of Houston v. Musick*, 531 S.W.2d 581, 589 (Tex.1975); *LaChance v. McKown*, 649 S.W.2d 658, 660 (Tex.App.—Texarkana 1983, writ ref'd n.r.e.). The statement that a particular asset belongs to, or is held by a married couple does not necessarily imply that each owns an interest in the asset. Married persons commonly speak of "our house," "our car," etc., without intending to refer to the underlying ownership of the asset. The question of actual ownership is generally irrelevant to the parties during the term of the marriage, when even separately owned assets are often shared between them. The husband's reference to "interests held by [the couple]," and "their oil and gas business," does not so clearly and unequivocally establish a gift of half ownership to the wife as to judicially estop the husband from claiming separate ownership in the present case.

In addition, it appears from the judgment in the prior federal tax case that characterization of the property as joint or separate was irrelevant to that court's determination that the couple was entitled to recover on their claim. Therefore, even assuming that the tax claim did suggest joint ownership, since this position did not affect the couple's success on the tax claim, we cannot say that it was "successfully maintained" in the prior judicial proceeding for pur-

poses of judicial estoppel. At least in regard to the federal suit, the husband did not engage in that "deliberate shifting of position to suit exigencies of each particular case," that judicial estoppel seeks to discourage. *See Moore,* 629 S.W.2d at 829; *Yarber v. Pennell,* 443 S.W.2d 382, 384 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r. e.).

▆▆▆▆ Finally, though seemingly unrelated to her judicial estoppel contention, wife also argues under points twelve and thirteen that husband, by offering into evidence wife's Fourth Amended Answer and Counterclaim, conclusively established the claims of gift made therein. Wife relies on *Booker Custom Packing v. Caravan, Etc.,* 575 S.W.2d 329 (Tex.Civ.App.—Dallas 1979, no writ), for the proposition that offering an opponent's pleadings into evidence without limitation conclusively establishes the allegations made therein. *Id.* at 330. However, we choose to follow the more recent authority that a party is not conclusively bound by the introduction of an opponent's pleadings when he also introduces other evidence to controvert those pleadings. *Hackney v. Johnson,* 601 S.W.2d 523, 526–27 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.); *see also Ballard v. Aetna Casualty and Surety Co.,* 391 S.W.2d 510, 513 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.). In the present case, the husband himself directly controverted the wife's claims during his examination of her as an adverse witness. We hold that husband is not therefore bound to wife's claims of gift.

Appellant's twelfth, thirteenth and seventh points of error are overruled.

By her eighth point of error, appellant complains that the trial court erred in refusing to strike Howard's testimony that the Welder–Dobie Ranch was appellee's separate property, when it was revealed that Howard used improper rules of law in arriving at that opinion, namely, that husband's taking title to the property in his name alone after marriage suggested that it was his separate property. However, in view of our disposition of appellant's first point of error and our conclusion that error

in the court's charge regarding the Welder–Dobie Ranch was harmful and requires reversal of the jury's finding on the husband's separate interest in the ranch, we need not address point eight.

By her ninth point of error, appellant complains that the trial court erred in refusing to permit her to cross-examine Howard on the basis for his use of the presumption in tracing separate property that community funds are withdrawn first from an account in which separate and community funds are mixed.

During cross-examination, appellant established that Howard's tracing of appellee's funds was largely based on the community-out-first presumption as set forth in *Sibley v. Sibley,* 286 S.W.2d 657, 659 (Tex. Civ.App.—Dallas 1955, writ dism'd). Appellant then proceeded to ask Howard about *Sibley* and other cases that followed it, in an attempt to impeach Howard by showing that *Sibley's* community-out-first presumption does not apply to the present case. The trial court, however, sustained appellee's objection to this line of questioning and refused to allow appellant to cross-examine Howard about the details of individual cases, on the ground that it was the court's function to instruct the jury on the law, and the court would not permit appellant to ask about specific cases or the rationale behind them. Appellant, however, complains that the court's refusal improperly denied her the opportunity to show by cross-examination the fallacy of Howard's application of the community-out-first presumption.

▆▆ We first address whether appellant's cross-examination of Howard about the presumption was proper. Fairness and efficiency dictate that an expert may state an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and is based on proper legal concepts. *Birchfield v. Texarkana Memorial Hospital,* 747 S.W.2d 361, 365 (Tex.1987); Tex.R.Civ.Evid. 704; *see also Louder v. De Leon,* 754 S.W.2d 148 (Tex. 1988); *Dieter v. Baker Service Tools, A Division of Baker International, Inc.,* 776 S.W.2d 781, 784 (Tex.App.—Corpus Christi

1989, writ denied). In *Birchfield* and *Louder*, for instance, the court specifically allowed expert testimony about a party's "negligence" directly, rather than requiring such testimony to be confined to lay terms of violation of the standard of care, from which the jury could later infer negligence under the court's charge.

Nevertheless, these cases do not open the way for an expert to testify directly to his understanding of the law, but merely allow him to apply legal terms to his understanding of the factual matters in issue. It is still an elementary principle that witnesses are to give evidence as to facts, and not statements of law. The sound reason for this distinction is that, because of his special training and experience, the trial judge is better equipped to determine questions of law and instruct the jury accordingly. *Withrow v. Shaw*, 709 S.W.2d 759, 760 (Tex.App.—Beaumont 1986, writ ref'd n.r.e.); *Collins v. Gladden*, 466 S.W.2d 629 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.).

In the present case, it certainly was acceptable for Howard to explain the methods he used to trace appellee's separate funds through the joint account, and to refer to the community-out-first presumption as one of the tools used in this tracing. However, the questions appellant's attorney asked about Howard's understanding and interpretation of specific case law improperly called for the witness to make statements of law, and it was not error for the trial court to sustain appellee's objection. Any fallacy in the methods used to trace separate funds is a legal matter for the court to determine and not a proper subject for cross-examination.[2]

Moreover, we hold that Howard's application of the community-out-first presumption was legally correct under the circumstances of the present case, and any potential error committed by the trial court in limiting the scope of the Wife's cross-examination of Howard would be rendered harmless. *See* Tex.R.App.P. 81(b)(1). Our courts have developed rules of tracing to distinguish the character of funds which are withdrawn from an account of mixed separate and community funds. Where a joint bank account contains both community and separate funds, we presume that the community funds are drawn out first, before separate funds are withdrawn, and where there are sufficient funds at all times to cover the separate property balance in the account at the time of divorce, we presume that the balance remains separate property. *Sibley*, 286 S.W.2d at 659; *see also Harris v. Ventura*, 582 S.W.2d 853, 855–56 (Tex.Civ.App.—Beaumont 1979, no writ); *Horlock v. Horlock*, 533 S.W.2d 52, 58 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ dism'd); *Barrington v. Barrington*, 290 S.W.2d 297, 304 (Tex. Civ.App.—Texarkana 1956, no writ); *but cf. Goodridge v. Goodridge*, 591 S.W.2d 571, 573 (Tex.Civ.App.—Dallas 1979, writ dism'd).[3]

---

2. We note, however, that a host of legal problems are raised by the application of the *Birchfield* rule allowing expert testimony on mixed questions of law and fact, not the least of which is the protection of a party's right to cross-examine an expert witness under Texas Rule of Civil Evidence 705. Rule 705 provides that an expert may testify in terms of an opinion and state the reasons for his opinion without prior disclosure of the underlying facts or data. Nonetheless, Rule 705 also provides that the expert may be required to disclose, on cross-examination, the underlying facts or data. Furthermore, under Texas Rule of Civil Evidence 611(b), a witness may be cross-examined on any matter relevant to any issue in the case. *Birchfield* allows an expert to testify on a mixed question of law and fact provided that the expert's opinion is based on proper legal concepts. The problem occurs when an opposing party wishes to challenge the propriety of the expert's legal concepts. We are thus confronted with several competing ideals: a proponent's *Birchfield* right to elicit expert testimony on mixed questions of law and fact; an opponent's 611(b) and 705 right to cross-examine the expert; and the trial court's exercise of discretion when restricting cross-examination to avoid jury confusion.

3. In *Goodridge*, the Court suggests that commingling of community and separate funds irreversibly changes the character of those funds. *Goodridge*, however, seems to be in conflict with the well-established rule that depositing community and separate funds in the same account does not establish the entire amount as community when the separate funds may be traced. *See Trawick v. Trawick*, 671 S.W.2d 105, 110 (Tex.App.—El Paso 1984, no writ); *Hol-*

Appellant argues that the community-out-first presumption should be limited to situations where one party is acting in a special position of trust with regard to the other's funds, over and above the trust relationship inherent in the very nature of a joint account. *Sibley*, however, does not limit itself in this way. As in the present case, *Sibley* determined rights to a joint account held by the parties during marriage and used to pay community expenditures, in which one of the parties had deposited separate funds. The only requirement for tracing and the application of the community-out-first presumption is that the party attempting to overcome the community presumption produce clear evidence of the transactions affecting the commingled account. *See McKinley v. McKinley*, 496 S.W.2d 540, 543–44 (Tex.1973); *Kuehn v. Kuehn*, 594 S.W.2d 158 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). Appellant's ninth point of error is overruled.

By her fifteenth point of error, appellant complains that the trial court erred in granting appellee's judgment notwithstanding the verdict to disregard the jury's finding that husband held the Welder–Dobie Ranch 23.5% and the 604 N. Craig Street property 50% in constructive trust for wife. To sustain the action of the trial court in granting a motion for judgment notwithstanding the verdict, there must be no evidence to support the jury findings. *Williams v. Bennett*, 610 S.W.2d 144 (Tex. 1980).

A constructive trust is imposed by law because the person holding title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. *Omohundro v. Matthews*, 341 S.W.2d 401, 405 (Tex.1960); *Johnston v. Mabrey*, 677 S.W.2d 236, 239 (Tex.App.—Corpus Christi 1984, no writ). In the present case, there is no evidence of unjust enrichment of, or wrongdoing by the husband with regard to these properties which could have given rise to a constructive trust in favor of the wife. Any claim

that the wife may have had to these properties as a gift from the husband, moreover, was negated by the jury's findings in response to Jury Questions 10 and 12, that the husband made no gift or representation to the wife that the couple owned the properties jointly. Appellant's fifteenth point of error is overruled.

By her sixteenth point of error, appellant complains that the overall division of the community property was an abuse of discretion. In *Jacobs v. Jacobs*, 687 S.W.2d 731 (Tex.1985), the Texas Supreme Court directed courts of appeals to remand the entire community estate for a new division when reversible error materially affects the trial court's "just and right" division of the community estate, whether the error lies in the division the community property or in the definition of what property is properly a part of the community estate and therefore subject to division. *Id.* at 733.

In the present case, because of reversible error in the charge as discussed in our disposition of point one, we must reverse and remand this case for a redetermination of the community and separate percentages of the single most valuable asset owned by the couple, the Welder–Dobie Ranch. We hold that this materially affects the trial court's just and right division of the community estate, and remand the entire community estate as well for a new division. Therefore, we need not address appellant's sixteenth point of error.

By her seventeenth point of error, appellant complains of the trial court's award to husband of appellate attorney's fees which were not contingent upon success on appeal. In a divorce case, a trial court's unconditional award of attorney's fees on appeal is considered a part of the just and right division of the community estate. *See Abrams v. Abrams*, 713 S.W.2d 195, 197–98 (Tex.App.—Corpus Christi, 1986, no writ). Therefore, the trial court's award of attorney's fees on appeal

loway v. Holloway, 671 S.W.2d 51, 60 (Tex.App. —Dallas 1983, writ dism'd); *Harris v. Ventura*, 582 S.W.2d 853, 855 (Tex.Civ.App.—Beaumont

1979, no writ); *Farrow v. Farrow*, 238 S.W.2d 255, 257 (Tex.Civ.App.—Austin 1951, no writ).

must also be reversed and remanded for a redetermination, and we need not address appellant's seventeenth point of error.

By his sole cross-point, appellee asks this court to award him a 16.8% separate property interest in the Welder–Dobie Ranch if we reverse the percentages awarded by the trial court, and to award his separate estate reimbursement for the amounts paid to retire the notes on the Welder–Dobie Ranch.

Appellee asks that, in the event this court reverses the judgment awarding him a 53% interest in the Welder–Dobie Ranch, we nevertheless award him a 16.8% interest, based on the percentage of the purchase price paid for with the $300,000 down payment. However, in view of our disposition of point one, we hold that the percentage of the husband's separate property ownership of the Welder–Dobie Ranch remains a question of fact for redetermination by the factfinder on remand.

Appellee also requests that this court order reimbursement from the community for the amounts he paid from his separate funds to retire notes given as part of the purchase price for the Welder–Dobie Ranch. In response to Jury Question 7, the jury found that husband was not entitled to any reimbursement for funds expended by his separate estate to pay the purchase money debt on the Welder–Dobie Ranch. However, this finding must be viewed in relation to the jury's finding that the Welder–Dobie Ranch was 53% husband's separate property. The incorrect jury instruction discussed in our disposition of appellant's first point of error, evidently misled the jury into accounting for the husband's expenditures of his separate funds to pay the debt on the ranch by allocating a higher portion of the ranch to his separate estate, rather than reimbursing him for such expenditures. However, any reimbursement due the husband is also a matter for the factfinder to determine on remand. Appellee's cross-point is overruled.

We REVERSE and REMAND for new trial those portions of the judgment which allocated percentage ownership and divided the Welder–Dobie Ranch between the parties, which denied the appellee reimbursement for payment of funds expended by his separate estate to pay the purchase money debt on the Welder–Dobie Ranch, and which divided the community estate between the parties. The remainder of the trial court's judgment is AFFIRMED.

UTTER, J., not participating.