TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00516-CV






Marvin Barth, Appellant



v.



Elsie Lucille Barth, Appellee





 

FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT


NO. 96-D-042, HONORABLE HENRY J. STRAUSS, JUDGE PRESIDING 




 

 This appeal arises out of a divorce proceeding brought by appellant Marvin Barth,
who was almost eighty-one years' old at time of trial, against his wife, appellee Elsie Lucille Barth,
who was about sixty-nine years' old. Marvin appeals, complaining that the district court erred (1) in
its characterization of a number of items of farm equipment he argues should be considered his
separate property, (2) in allowing testimony about tracing of separate assets commingled with
community funds, (3) in finding he and Lucille were both entitled to the same amount of
reimbursement for using their separate assets to benefit the community estate, (4) in finding he was
only entitled to reimbursement in the amount of $15,000, and (5) in its division of the community
estate, the larger part of which was awarded to Lucille. We affirm the district court's judgment.

 The Barths were married in 1948 and separated in 1996. The Barths' business and
personal expenses were paid from their joint account. In about 1978, Marvin received an inheritance
from his mother and he deposited at least a portion of this separate asset into the joint account. In
1986, he established a separate account in his name, and he alleges that, "with the exception of some
small irrelevant amounts near the end of the marriage," the only funds deposited into his separate
account were his separate property, including funds inherited from his father. In February 1996,
Marvin moved out of the family home and filed for divorce. At the time they separated, the Barths
owned their home on about three acres, household furnishings, cattle, several motor vehicles, baled
hay, more than 100 items of farm equipment, and about 170 acres. Marvin's separate estate
consisted of about $30,000 in certificates of deposit, stock, and about 430 acres. Lucille's separate
estate consisted of a bedroom suite. (1) 

 After an extensive bench trial, (2) the district court awarded Marvin nine pieces of farm
equipment as his separate property and divided the community estate, giving Lucille the home and
a 104-acre tract of land, household furnishings and personal items in her possession, an automobile
in her possession, and half of the more than 100 items of farm equipment. Marvin received
furnishings and household goods in his possession, his separate bank account which at the time of
their separation had in it more than $10,000 (some of which the district court found was community
property), a truck in his possession, the other half of the farm equipment, and a sixty-three-acre tract
of land. The district court divided the farm equipment by attaching to the divorce decree an
inventory of the 106 items and giving Lucille the even-numbered items and Marvin the odd-numbered items. The court also found Marvin and Lucille were each owed $15,000 reimbursement,
and therefore their reimbursement claims cancelled one another out. 

 In his first issue, Marvin contends the district court "erred in characterizing various
items of [Marvin's] personal property as community property and awarding those items" to Lucille. 

 The community estate consists of all property, other than separate property, acquired
by either spouse during a marriage, and property owned by either spouse at the time of divorce is
presumed to be community property. Tex. Fam. Code Ann. §§ 3.002, .003(a) (West 1998). A
spouse's separate estate consists of property owned by that spouse before marriage, property acquired
during the marriage by the spouse by gift or inheritance, and recovery for personal injuries suffered
by that spouse during the marriage, with the exception of lost earning capacity during the marriage. 
Id. § 3.001 (West 1998). A trial court may not divest a spouse of his or her separate property in
dividing property in a divorce proceeding. Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 142 (Tex.
1977); Cameron v. Cameron, 641 S.W.2d 210, 220 (Tex. 1982); Wilkerson v. Wilkerson, 992 S.W.2d
719, 722 (Tex. App.--Austin 1999, no pet.). However, to overcome the community-property
presumption, the spouse claiming an item as his separate property must establish that fact by clear
and convincing evidence and must trace and clearly identify the property claimed. Tex. Fam. Code
Ann. § 3.003(b); McElwee v. McElwee, 911 S.W.2d 182, 188 (Tex. App.--Houston [1st Dist.] 1995,
writ denied).

 In his brief, Marvin lists eleven items that he alleges are his separate property: D8
(bulldozer) parts; two no-till drills; a New Holland mower; a five-bale hay trailer; a 1982 Ford
pickup truck; a liquid fertilizer rig; a scraper; a Campbell air compressor; a Sperry New Holland
rake; and a headgate. We will individually address Marvin's attempts to trace the separate nature
of each item below.

D8 Parts - Marvin cites to an exhibit that is a 1980 bank statement for the Barths'
joint account and to a page in the reporter's record on which there is no mention of
D8 parts or the cited exhibit. The exhibit contains copies of checks, one of which is
to Rutledge Equipment and is for "D8 parts." (In his appendix to his brief, Marvin
states two checks written to Rutledge, one in February 1980 and the other in March
1980, were for D8 parts. The exhibit to which he cites only contains a copy of the
February check. The next exhibit, which is a bank statement for the first half of
March 1980, does not include the March check he alleges was for D8 parts.) In
testimony elsewhere in the record, Marvin was asked about various receipts for parts
for a D8 bulldozer, the engine of which was rebuilt several times over the years. 
Marvin testified that it was "one of the bulldozers that was later sold to Dwayne [his
son]." Any complaints related to Marvin's rights to reimbursement or to the court's
division of the community estate will be addressed later in this opinion.

No-Till Drill bought from Capital City Oliver and No-Till Drill bought from
Lanford Equipment - The inventory of the parties' farm equipment only lists one
"MF 427 No Till Drill." To show his entitlement to the drill from Capital City
Oliver, Marvin cites to an exhibit which consists of 20 pages of copies of checks and
receipts from various equipment dealers, one of which is receipt from Capital City
Oliver for a no-till drill bought in August 1980. The testimony to which Marvin cites
this Court does not discuss that exhibit or a no-till drill. Testimony regarding the
exhibit does not refer to a no-till drill. Lucille contends the drill from Capital City
Oliver was no longer owned by the parties when they separated. As for the no-till
drill from Lanford Equipment, Marvin cites us to receipts in the record for a "Massey
Ferguson No-Till Drill," model number 427. We believe this is the no-till drill listed
in the inventory that was awarded to Marvin as community property.

New Holland Mower - Marvin cites to an exhibit that includes a receipt for a New
Holland 495 Mower Conditioner. Marvin was awarded a New Holland 495 Hay
Conditioner as his separate property in the divorce decree. The inventory lists two
NH 495 hay conditioners, one of which was the conditioner awarded to Marvin as his
separate property, the other of which was awarded to Lucille. Marvin does not cite
evidence that might indicate which conditioner he asserts is his separate property.

Five-Bale Hay Trailer - Marvin cites to an exhibit including two receipts from
K&M Manufacturing. The receipts are handwritten and the item descriptions are
mostly indecipherable. They appear to read "5 bale." The only five-bale hay trailer
listed on the inventory was awarded to Marvin as an item of community property.

1982 Ford Pickup Truck - Marvin cites only to an exhibit including the certificate
of title for a 1982 Ford pickup truck. He does not cite to any evidence regarding
what funds were used to pay for the truck. Furthermore, Marvin received the only
1982 Ford pickup truck on the Barths' inventory as his community property. The
testimony to which he refers concerns the admission of an entirely different exhibit.

Liquid Fertilizer Rig - Marvin cites to a receipt from Texas High Roller, which
states Marvin paid $3000 for a "used liquid rig." He then cites to testimony by
Lucille concerning a different exhibit. He does not explain or cite to testimony that
would explain which inventory item this receipt might be for. Three items on the
inventory refer to fertilizer - a fertilizer spreader, a High Roller fertilizer spreader,
and a Ford fertilizer truck with tank. All three items went to Marvin as his share of
the community estate. Lucille contends this particular rig was not owned by the
parties at the time of their separation.

Scraper - Marvin cites to an exhibit consisting of a 1984 statement from the Barths'
joint account and copies of a number of checks written on the account, including a
check to T.C. Steiner for $2000 for a "scraper" (in his appendix, Marvin says the
check was "for $1186.80 all of which was Marvin's separate funds"). Nowhere in
the testimony to which Marvin refers does Lucille refer to a scraper; instead she
testifies about the Barths' bank statement and an entirely different exhibit than the
one to which Marvin cites. Lucille contends this scraper was not owned by the
parties at time of the separation and contends the check to which Marvin refers paid
for a different scraper. The inventory does not list a scraper.

Campbell Air Compressor - Again, nowhere in Lucille's testimony to which
Marvin cites this Court as evidence of his tracing did she discuss an air compressor;
her testimony was about the Barths' bank account in 1984. Marvin also cites us to
a receipt for a Campbell Hansfeld Air Compressor and to a 1984 bank statement
including a check for "parts for air comp." The inventory does not list a Campbell
air compressor; it does list two Lindsey air compressors, one of which Marvin
received as his share of the community estate. Lucille contends this particular air
compressor was not owned by the parties when they separated.

Sperry New Holland Rake - Marvin cites to Lucille's testimony regarding their
joint account and their 1984 tax returns. She stated that a portion of the funds
deposited into the account was from the sale of Marvin's separate property, but did
not testify about the purchase of any farm equipment. Marvin also cites to a receipt
for a Sperry New Holland Hay Rake, model number 258, serial number 597238. The
Barths' inventory lists two hay rakes, one listed as a "New Holland SN129646 Hay
Rake," which Marvin received as community property, and another listed simply as
a "NH 258 Hay Rake," which Marvin was awarded as his separate property.

Headgate - Marvin cites us to a receipt for a "SC Headgate W/Nek Stender," and to
Lucille's testimony where she discussed the joint account and the deposit of some of
Marvin's separate funds into the account. The inventory lists three different
headgates, a "Homemade Headgate," a "Big Valley Headgate," and a "Blue
Headgate." Marvin was awarded the Big Valley Headgate as his separate property
and received the homemade headgate as community property. Lucille received the
blue headgate as community property. Lucille contends that the headgate Marvin
received as his separate property is the same headgate listed in his brief, which would
mean that Marvin's brief refers to the Big Valley Headgate. None of the testimony
to which Marvin refers enlightens us as to which headgate he requests on appeal.

 The district court had before it volumes upon volumes of financial records, and it
appears that the court carefully reviewed the evidence in disposing of these eleven items asserted to
be Marvin's separate property. It appears from the record that of the eleven items Marvin lists in his
brief, the Sperry New Holland rake was awarded as his separate property, and the five-bale trailer,
the 1982 Ford truck, and the no-till drill bought from Lanford Equipment were awarded as Marvin's
community property. It further appears, although it is less clear, that Marvin received the New
Holland mower and headgate as his separate property. Four items, the other no-till drill, the used
fertilizer rig, the scraper, and the Campbell air compressor, appear not to have been owned by the
Barths at the time they separated. The D8 parts were used to rebuild the bulldozer's engine and
replaced during a later rebuild, and the bulldozer was conveyed by Marvin to his son. 

 Marvin argues that the district court erred in characterizing those items "as
community property and awarding those items of property to appellee." However, Lucille did not
receive any of the items of which he complains, except for her one-half interest in the bulldozer
which at one point in the past contained the D8 parts. Marvin has wholly failed to carry his burden
of tracing the separate property origins of the items he lists in his brief and has not shown the district
court abused its discretion in the manner in which it awarded those items. We overrule Marvin's
first issue.

 In his second issue, Marvin contends the district court "erred in admitting various
exhibits relating [to] tracing prepared by Steven Lawson, CPA and by allowing testimony about
those exhibits, because the witness had no expertise on tracing and the exhibits offered had not been
timely produced." However, Marvin himself notes that Lawson's exhibit was not admitted into
evidence. We will address the remaining part of Marvin's complaint, that Lawson was not qualified
to testify as an expert on tracing.

 A trial court's decision admitting or excluding witness testimony is reviewed under
an abuse of discretion standard. E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558
(Tex. 1995). The test is not whether, in our opinion, "'facts present an appropriate case for the trial
court's action,'" and we will not conclude the trial court abused its discretion if "the trial court
committed a mere error in judgment." Id. (quoting Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985)). 

 Lucille called Steve Lawson, her accountant, to testify about his efforts to "trace Mr.
Barth's deposit of separate funds into the joint account." Lawson had been the Barths' accountant
before their separation and had been preparing the Barths' tax returns since about 1988. In a voir
dire examination regarding his qualifications, Lawson stated he was not an expert in accounting or
in the field of tracing separate or community funds. He agreed that his report "summarize[d] . . . the
financial transactions of the parties insofar as they relate to their checking account statements and
the checks that went through those statements" and "purport[ed] to have a running balance of
separate versus community balance." Lawson said he did not have formal training on what makes
an item separate or community property and said he based his characterization of the traced funds
on instructions given to him by Lucille's attorney. Marvin objected to Lawson's testimony, arguing
that Lawson was not an expert in that field and "would only be parroting certain facts that were given
to him" by Lucille's attorney. Lucille countered that she was not calling Lawson as an expert in
tracing or to make any legal determinations; she said she sought his testimony to show that tracing
was possible but that Marvin had failed to do so. (3) Lucille said Lawson's testimony would give the
court "a better idea of how much of each one of these deposits was community and how much was
separate based on recognized principles," and noted that Lawson's testimony would be less
persuasive if Marvin could show the assumptions Lawson used were invalid. The district court
found that Lawson was not an expert in tracing but allowed him to testify about his computations. 
In closing arguments, Lucille's attorney reiterated that Lawson's testimony showed only that Marvin
had access to information that would have made it possible for him to properly trace his separate
property as it moved in and out of the joint account. She restated that Lawson did not make his own
legal determinations of the separate or community nature of any funds. 

 Essentially, Lawson's testimony was a chronology of deposits to and withdrawals
from the Barths' joint account. Lawson reviewed the Barths' account starting just before Marvin
inherited property from his mother in 1978. He then traced deposits made from Marvin's separate
account, using the "community out first" principle. See Smith v. Smith, 22 S.W.3d 140, 146 (Tex.
App.--Houston [14th Dist.] 2000, no pet.); Welder v. Welder, 794 S.W.2d 420, 433 (Tex.
App.--Corpus Christi 1990, no writ). He traced the account from 1978 through the time of the
divorce. It appears that Lawson simply walked the district court through the Barths' bank balances
over twenty years, showing when the community funds were used up by withdrawals, when Marvin's
separate funds were deposited to shore up the community account, and what balance of his separate
deposits was left from month to month and year to year. Lawson concluded that, as of 1993, all of
the separate funds Marvin had deposited into the account had been depleted. 

 Marvin has not shown that the trial court acted without reference to any guiding rules
or principles in allowing Lawson's testimony for a limited purpose. Robinson, 923 S.W.2d at 558. 
The district court did not err in allowing Lawson's testimony, especially since the testimony was
limited to the purpose of showing that tracing was possible and showing the method Marvin could
have used to do tracing. We overrule Marvin's second issue.

 In his third issue, Marvin contends the evidence was factually insufficient to support
the trial court's finding that Marvin's and Lucille's reimbursement rights were equal. (4) In his fourth
issue, he contends the trial court erred in refusing to award him substantially more than $15,000
reimbursement for the use of his separate estate to benefit the community estate.

 The use of one estate's assets to complete the purchase of another estate's property
or to otherwise benefit the other estate may give rise to a claim of reimbursement by the contributing
estate against the benefitted estate. Penick v. Penick, 783 S.W.2d 194, 197 (Tex. 1988); Wilkerson,
992 S.W.2d at 722-23. Reimbursement is an equitable remedy, and the trial court must look at all
the circumstances to determine what is fair, just, and equitable. Penick, 783 S.W.2d at 197 (citing
27 Am. Jur.2d Equity § 102 (1966)); Anderson v. Gilliland, 684 S.W.2d 673, 675 (Tex. 1985). 
Reimbursement is not a mere balancing of the ledgers between the marital estates, and a trial court's
discretion to determine reimbursement is as broad as that it has in dividing the community estate. 
Penick, 783 S.W.2d at 198. A court determining a party's right to reimbursement must ensure that
the benefitted estate is not required to pay more than the amount by which it was benefitted. 
Anderson, 684 S.W.2d at 675. Therefore, a reimbursement claim is measured by the enhancement
in value to the benefitted estate. Id.

 We review fact findings in a bench trial under the same factual sufficiency standard
used in reviewing a jury's determination. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). In
reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence and set
aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 Marvin points to evidence in the record indicating that throughout the marriage he
contributed large sums of his separate funds to enhance the community estate. (5) Marvin also argues
he should be reimbursed for loans he took out to benefit the community estate, contending he repaid
those loans with his separate property.

 While the record contains copies of financing agreements and other loans made in
Marvin's name, it is not clear from the record that those loans were repaid with Marvin's separate
funds. Marvin does not point to evidence that would establish that he repaid the loans with his
separate property other than testimony where Marvin was asked, "And were a number of those loans
paid back by you after you got money from your separate property that was deposited into the
account?" Marvin answered, "Yes, sir, I think there were." Nor does Marvin cite to evidence
establishing that he used substantial amounts of his separate funds to pay off community debts, other
than his testimony that there were "occasions when funds were needed to be transferred" from
Marvin's account to the Barths' joint account for the Barths to operate their businesses. Further, the
record does not establish the use to which any financed equipment was put--whether used on the
community's lands or on Marvin's separate, inherited land.

 More importantly, although Marvin says he "used his separate funds on different
occasions in order to preserve, protect, and enhance the community estate," he has not established
the extent to which the community estate was benefitted by his contributions of his separate property
and does not attack the trial court's findings that he took various community monies and property
and put them into his separate estate. See Penick, 783 S.W.2d at 198.

 Marvin points to several pages of his testimony to show that the community estate
benefitted from the use of his separate estate. He said, "[I]f I needed money, I'd transfer it from my
special [separate] account into our account." He also said, "I just went in there in the bank and had
them transfer the amount, the money [from his separate account to the joint account]. . . . Every time
I transferred it, we needed it in there." Finally, he points to the following testimony:


 Mr. Barth, could your earth moving business have been conducted and earned the
sums of money it earned without your transferring and expending the separate
funds you inherited from your mother and father on it?


 


 No, sir.


 


 Okay. What would have happened to that equipment and that business if you
hadn't been willing to transfer your money and spend it for those expenses?



 * * * 



 Well, I would have had to borrow all that money from the bank, but I'd kept
going.


 


 Okay. You did, in fact, borrow some money from the bank on a number of times
as you went along? 


 

 A: Yes, sir.

 


 Finally, Marvin said that since he inherited acreage from his parents, he has improved
it from unimproved pasture to highly improved pasture, planting several kinds of grasses and putting
up fencing, tanks, pens, lots, and gates. He and Lucille were unable to testify as to how much money
was spent on the community acreage versus how much was spent improving Marvin's separate land. 
At some point before the Barths divorced, Marvin started depositing his social security check into
his separate account, rather than the joint account. He also deposited various other community
funds, such as auction proceeds, money from the sale of cattle and hay, and lease payments, into his
separate account. 

 While Marvin may have shown that he deposited significant sums of his separate
money into the joint account, he has not established what enhancement the community estate enjoyed
due to his separate contributions. See Penick, 783 S.W.2d at 198; Anderson, 684 S.W.2d at 675. 
Further, in light of the fact that he was found to have taken community property as if it were his
separate property and used community property to improve his separate estate, he has not established
that the district court abused its discretion in failing to find that, under principles of equity, he was
owed more than $15,000 in reimbursement. We overrule Marvin's third and fourth issues.

 In his final issue, Marvin contends that the trial court abused its discretion in the
division of the farm equipment, home furnishings, vehicles, personal property, and community real
estate. He argues the division was not fair and equitable, as required by the Family Code, because
Lucille received the larger share of the community real estate. 

 In granting a divorce, a trial court "shall order a division of the estate of the parties
in a manner that the court deems just and right." Tex. Fam. Code Ann. § 7.001 (West 1998);
Wilkerson, 992 S.W.2d at 722. The trial court has broad discretion in making that division. Murff
v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). On appeal, we will presume the trial court used its
discretion properly and reverse only if we find the trial court clearly abused its discretion. Id. at 699. 
A clear abuse of discretion is shown only if the property division is manifestly unjust and unfair. 
Mann v. Mann, 607 S.W.2d 243, 245 (Tex. 1980). We do not compare the division of each item or
category of property in making this determination. Instead, the complaining party must show that
the trial court abused its discretion in the overall division. See Murff, 615 S.W.2d at 699-700;
Walston v. Walston, 971 S.W.2d 687, 693 (Tex. App.--Waco 1998, pet. denied); Campbell v.
Campbell, 587 S.W.2d 513, 515 (Tex. Civ. App.--Dallas 1979, no writ).

 The district court awarded Lucille the homestead and 104 acres that serves as the
"hub" of her cattle business. She bought Marvin's one-half interest in the cattle business before trial. 
Lucille testified she needed the 104 acres because barns, pens, fencing, and other improvements were
already in place and she did not want to and was not able to construct such improvements on the
pastures she leased from other people. Marvin received the remaining sixty-three acres, which
include a $300-a-month tower lease paid by a company for the use of a communications tower on
that land. (6) Marvin testified that he runs cattle on his separate property and also gets a $900 social
security check and a royalty check each month. He said that financially he has "no worries" and he
lives well, but without "any money to waste." Lucille testified she gets a $300 social security check
every month and her only other income comes from her cattle business. Marvin does not attack the
trial court's findings that his separate estate is substantially larger than Lucille's separate estate or
that he receives substantially more monthly social security benefits than does Lucille.

 Marvin also complains that the district court abused its discretion in awarding him
the odd-numbered items of farm equipment and in awarding each party the household items already
in his or her possession. With respect to the equipment, Marvin argues that his witness, David
Anton, gave the only testimony as to the equipment's value, and that the court should have attempted
to divide it more precisely. However, he does not dispute the district court's finding that Anton's
testimony, which was to the equipment's auction liquidation value, not market or dealer value, was
"insufficient and not conclusive." Even assuming Anton's valuations were appropriate, we see no
harm suffered due to the court's division. We have attempted to apply Anton's values to the
appropriate items of equipment, which are described in different words and sequences throughout
the record, and it appears that overall Marvin received more valuable items than did Lucille. Using
one of Anton's appraisals, it appears Marvin received items worth in excess of $58,000, while
Lucille's items were worth approximately $38,000. Marvin does not suggest what would have been
a more equitable method of dividing the equipment. 

 The trial court was entitled to take into account the parties' circumstances, including
their separate estates. See Murff, 615 S.W.2d at 698-99. Marvin has not demonstrated that the trial
court's division of the community estate was a clear abuse of discretion. We overrule his final issue
and affirm the district court's judgment.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: July 26, 2001

Do Not Publish
1. During the marriage, Lucille inherited about $24,000, which was deposited into the Barths'
joint account.
2. The record on appeal consists of eight volumes of testimony taken from nine witnesses over
about two weeks and fourteen volumes of exhibits consisting of hundreds of pages of bank
statements, check copies, and receipts. 
3. Much of the Barths' financial information was kept in spiral notebooks over the years. 
Marvin and Lucille generally kept records of the incomes and deposits made in each month, as well
as the amounts and payees of the month's expenditures. Marvin made notations of loans he obtained
and deposited into the community account. These records, or substantial portions of these records,
were introduced into evidence, as well as pages upon pages of bank statements, copies of checks,
and receipts. Lucille and Marvin were walked through these records during their testimony. 
Lawson's testimony and calculations also drew from these records.
4. However, Marvin does not attack the district court's finding that Lucille, who deposited
$24,000 of inherited money into the joint account, deserved $15,000 in reimbursement. Therefore,
we will concentrate our discussion on whether Marvin was entitled to more than $15,000.
5. Marvin specifically notes that he spent about $12,000 of his separate money to replace the
engine in a bulldozer. Marvin sold his one-half interest in the Barths' heavy equipment to his son,
Dwayne, reserving the right to claim reimbursement for separate property invested in that equipment. 
He also testified that the D-8 bulldozer engine he paid for with his separate funds was no longer in
the bulldozer when he sold his interest to Dwayne; the engine had been rebuilt several times over
the approximately thirty years the Barths owned it. 
6. Marvin does not attack the district court's finding that his valuation expert failed to take the
tower lease into account in valuing the property. Thus, Marvin's valuation is considerably lower
than the actual value of the property he was awarded.



ified she gets a $300 social security check
every month and her only other income comes from her cattle business. Marvin does not attack the
trial court's findings that his separate estate is substantially larger than Lucille's separate estate or
that he receives substantially more monthly social security benefits than does Lucille.

 Marvin also complains that the district court abused its discretion in awarding him
the odd-numbered items of farm equipment and in awarding each party the household items already
in his or her possession. With respect to the equipment, Marvin argues that his witness, David
Anton, gave the only testimony as to the equipment's value, and that the court should have attempted
to divide it more precisely. However, he does not dispute the district court's finding that Anton's
testimony, which was to the equipment's auction liquidation value, not market or dealer value, was
"insufficient and not conclusive." Even assuming Anton's valuations were appropriate, we see no
harm suffered due to the court's division. We have attempted to apply Anton's values to the
appropriate items of equipment, which are described in different words and sequences throughout
the record, and it appears that overall Marvin received more valuable items than did Lucille. Using
one of Anton's appraisals, it appears Marvin received items worth in excess of $58,000, while
Lucille's items were worth approximately $38,000. Marvin does not suggest what would have been
a more equitable method of dividing the equipment. 

 The trial court was entitled to take into account the parties' circumstances, including
their separate estates. See Murff, 615 S.W.2d at 698-99. Marvin has not demonstrated that the trial
court's division of the community estate was a clear abuse of discretion. We overrule his final issue
and affirm the district court's judgment.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: July 26, 2001

Do Not Publish
1. During the marriage, Lucille inherited about $24,000, which was deposited into the Barths'
joint account.